LEWIS M. BURKETT, AS ADMINISTRATOR OF THE ESTATE OF PHILLIP E. BALAY, DECEASED *v.* CRULO TRUCKING COMPANY, INC., GEORGE MCMURRY.

[No. 1-975A154. Filed October 13, 1976. Waiver of Petition for Rehearing granted November 22, 1976.]

*John P. Price, David O. Tittle, Grace M. Curry, Bingham, Summers, Welsh & Spilman,* of Indianapolis, *Ruel W. Steele, Steele, Steele & Steele,* of Bedford, for appellant.

*James R. Cotner, Robert D. Mann, Cotner, Mann & Chapman,* of Bloomington, for appellees.

ROBERTSON, C.J.—This is an appeal from a jury trial in a wrongful death action brought by plaintiff-appellee, Lewis M. Burkett (Burkett), against defendant, George McMurry (McMurry), and defendant-appellant, Crulo Trucking Company, Inc. (Crulo).

Plaintiff's decedent, Phillip E. Balay, died of injuries sustained on October 7, 1971, when the auto in which he was a passenger was struck from the rear by McMurry's dump truck as the auto was stopped in preparation for a left turn. The action for wrongful death, filed December 22, 1971, was brought against McMurry and Crulo on the theory that McMurry was negligent and that at the time of the accident McMurry was an agent or employee of Crulo and was within the scope of such agency or employment.

McMurry and Crulo had entered into a lease agreement whereby McMurry would lease the truck he owned to Crulo on a day to day basis for the purpose of transporting crushed stone and other materials for Crulo. McMurry had, on a semi-regular basis immediately before and after the accident, hauled materials for Crulo. Affixed to the truck at the time of the accident were the P.S.C.I. placards of another company for whom McMurry also sometimes hauled. The evidence most favorable to the verdict of the jury is that McMurry was, at the time of the accident, on his way to pick up a load of stone at the behest of Crulo.

McMurry denied liability but admitted the agency relationship in his answer filed February 11, 1972. He died November 21, 1972. Thereafter, on January 9, 1975, before the commencement of the trial on January 21, 1975, the following loan receipt agreement was executed by Burkett and by the attorney for McMurry and his successors.

LOAN AGREEMENT AND CONTRACTUAL
PROMISES OF THE PARTIES TO THE LOAN

THIS CONTRACT OF AGREEMENT is made and entered into by and between LEWIS M. BURKETT, acting as Administrator of the Estate and for the heirs of Phillip Balay, deceased, (hereinafter called the "Borrower") and GEORGE MCMURRY and the legal and fiduciary successors in interest to George McMurry, who is also deceased, (hereinafter called the "Lender").

WITNESSETH:

WHEREAS, Charlene Balay, the widow of Phillip Balay, and Chaline, the late Phillip Balay's daughter, were both

deprived of the financial support, care, love, companionship and attention of their husband and father, respectively, when he, at the age of twenty-five (25) years, was killed in an accident on October 7, 1971, on Old State Road No. 37 near Zikes Road in Monroe County, Indiana, that occurred while George McMurry, who was working and driving his huge stone truck all in the scope of his employment for his employer, Crulo Trucking Co., Inc. negligently drove same into the rear of the automobile occupied by Phillip Balay that was stopped, preparatory to turning left off State Road No. 37 onto Zikes Road, knocking said auto one hundred five feet all the while crushing the car beneath it as it pushed it forward.

At the time of the accident, the car in which Mr. Balay was riding had its lights on and its left turn signal was working. Phillip Balay died with his wife at his side, five hours after the accident of a skull fracture and other injuries; and

WHEREAS, investigation and the facts discovered show that George McMurry at the time of the accident was acting within the scope of his employment for Crulo Trucking Company in that he was on his way to the Sieboldt quarry to pick up a load of stone to be hauled to the road construction site on new Highway 37. He was performing an essential part of the whole task which he was to perform for Crulo, i.e., traveling to the site where the load would be picked up and he was performing his job with Crulo as he had performed it in the past for them; and

WHEREAS, Lewis M. Burkett was appointed as Administrator of the Estate of Phillip M. Balay to collect legal damages, against those who wrongfully caused the death of Balay, for the benefit of his widow, orphan and all others entitled by law to receive damages on account of his untimely death; and, as such Administrator, the said Lewis M. Burkett has filed suit against the late George McMurry and the Crulo Trucking Co., Inc., who hired George McMurry under a truck lease agreement to do hauling work with McMurry's truck; and

WHEREAS, the lawsuit against McMurry and Crulo Trucking Co., Inc. was filed to collect Three Hundred Thousand Dollars ($300,000.00) damages against them, a just and appropriate sum, jointly and severally, based partially on the facts that at the time of his unfortunate death, Phillip Balay was in good health, had missed little or no work due to illness or disability, had recently served five years with the Indiana National Guard, was an ex-

perienced heavy equipment operator, with annual earnings of approximately Ten Thousand Five Hundred Dollars ($10,500.00) per year. The present value of the support which would have been furnished by Phillip Balay to his widow and daughter is in excess of Two Hundred Seventy-five Thousand Dollars ($275,000.00). This figure also does not take into account the loss of Phillip Balay's companionship, love, and guidance to his wife and infant daughter.

WHEREAS, by law in the State of Indiana and under the doctrine of "respondeat superior," the master or principal in this case, Crulo, is chargeable with, and liable for, any negligent act committed by its agent or servant, in this case, McMurry, while such agent or servant is acting in the scope and course of his employment. In such cases both master and servant (Crulo and McMurry) are liable for any injury or damages caused by such negligence, and either or both may be sued therefor at the option of the injured party. Furthermore, when both employer and employee are sued by the injured party, an agreement by one of the defendants in this case, McMurry, with the injured party does not bar the continuance of the action by the injured party against the other defendant, Crulo, when the compensation paid in the agreement, as in this case, is less than the full amount of loss suffered and compensation due on account of the injuries received.

WHEREAS, the Administrator has the right, guaranteed by law, to collect all damages included in any verdict jointly rendered against the said McMurry and Crulo Trucking Co., Inc. from whichever of said defendant parties the Administrator and his attorneys might select to enforce the execution of their judgment against, so that one of said parties might be compelled to pay the entirety of any joint judgment against them; and

WHEREAS, the lawsuit brought for the Balays is scheduled to be tried in the Lawrence Circuit Court at Bedford, Indiana, starting on Tuesday, January 21, 1975, by a jury to determine the amount of damages, and the legal liability and responsibility of the defendant McMurry and the defendant-employer of McMurry, Crulo Trucking Co., Inc. under proper instructions to be given by the Judge of the Court, with all proceedings therein subject to appeal and review by higher courts of the State of Indiana, which said trial and appeals might work an extreme delay in the receipt of any monies and funds to benefit the persons legally entitled to same on account of the wrongful and negligent death of Phillip Balay; and,

WHEREAS, the Borrower is in present need of funds and would like an assured sum certain in monies, without releasing or accepting any partial payment or satisfaction of the claims asserted in the litigation described, but desiring solely to contract away, in part, his right of execution and levy of execution against George McMurry or his legal fiduciary successor only, specifically reserving the right to collect through settlement or by execution and levy upon any judgment that is rendered against Crulo Trucking Co., Inc. whether joint or several, that includes it as a defendant judgment-debtor all sums which may be awarded up to and including the Three Hundred Thousand Dollars ($300,-000.00) prayed for in said complaint, and for which said legal liability of the Crulo Trucking Co., Inc., has liability insurance coverage of One Hundred Thousand Dollars ($100,000.00) with the North River Insurance Company in Policy No. GA 61 30 95; and,

WHEREAS, by reason of the negligence of George McMurry, for which Crulo Trucking Co., Inc. as his employer is liable, the plaintiff has been damaged, and there is due adequate compensation for the death of Phillip Balay, and that a review of other verdicts in similar death cases show that a verdict of between One Hundred Thirty Thousand Dollars ($130,000.00) and Three Hundred Thousand Dollars ($300,000.00), in all likelihood should be returned in favor of the plaintiff as Administrator of the Estate of Phillip Balay for the benefit of widow and infant daughter, and,

WHEREAS, Lender realizes that it is impossible to predict what decision might be rendered by a jury but it is also realized that the damages resulting from the accident could and probably will result in a jury verdict against Crulo Trucking Co., Inc. and George McMurry in an amount in excess of Eighty-five Thousand Dollars ($85,000.00) and up to Three Hundred Thousand Dollars ($300,000.00) as prayed for in said complaint; and

WHEREAS, the insurance company of George McMurry is liable only to the extent of its policy in the amount of One Hundred Thousand Dollars ($100,000.00) and no estate for George McMurry has been opened for probate; and

WHEREAS, Crulo Trucking Co., Inc. carries liability insurance which would cover any judgment returned against it; and

WHEREAS, the fiduciary representatives of George McMurry, deceased, on his behalf, are willing to make a loan to

the Borrower, which loan is made in consideration of and subject to all the terms, conditions and provisions, hereinafter mutually agreed upon, which would enable the plaintiff to receive some money at this time without jeopardizing his claim against Crulo Trucking Co., Inc.

NOW, THEREFORE,

IN CONSIDERATION of the foregoing, and the promises, conditions and covenants hereinafter undertaken, by the Borrower and Lender, and their respective successors in interest, it is agreed, as follows:

1. Contemporaneously with the execution of this agreement, there has been advanced to Lewis M. Burkett as Administrator of the Estate of Phillip Balay, deceased, the sum of Eighty-five Thousand Dollars ($85,000.00) *as a loan,* without interest repayable only in the event and to the extent that the said Borrower receive and collect a recovery by way of settlement or judgment from Crulo Trucking Co., Inc. by reason of the death of Phillip Balay, deceased, out of funds provided and paid by Crulo Trucking Co., Inc. or the North River Insurance Company, its liability insurer, in excess of a minimum amount of Fifty Thousand Dollars ($50,000.00) (from whatever source of origin), which said sum is exempted from the repayment obligation imposed on the Borrower.

2. The Borrower hereby expressly acknowledges receipt of the loan of Eighty-five Thousand Dollars ($85,000.00) from the Lender, and hereby agrees and promises to pay to the Lender, without interest, an amount equal to any sum collected in excess of Fifty Thousand Dollars ($50,-000.00) from either Crulo Trucking Co., Inc. or its liability insurer, however, not to exceed the amount of the loan, within thirty (30) days of receipt of same by Borrower.

3. The Borrower hereby covenants that he is the duly-authorized and appointed administrator of the Estate of Phillip Balay, deceased, and has secured the approval of the court having probate jurisdiction over his appointment to enter into this agreement and that he executes this agreement pursuant to order of such court dated the *8th* day of January, 1975, copy of which is attached hereto.

4. The Borrower promises, covenants and agrees that he will never attempt to collect or collect from George McMurry or from the fiduciary representative of his estate, or from the liability insurer who undertook the defense of George McMurry in the lawsuit brought by the Borrower upon any judgment that may hereafter be entered against

any of them on account of the death of Phillip Balay, and that he will likewise never assign, aid or assist any other party in so seeking to recover upon any such judgment, any assignment in violation hereof, being subject to every term hereof. The Borrower reserves the right to fully execute upon any judgment against any other party who may be liable to the satisfaction of said judgment other than those herein specifically designated.

5. It is further understood and agreed between the parties that the terms hereof are contractual, not a mere recital, and that the Borrower and those for whom he acts as a legal fiduciary do not hereby effect any release of their claims; nor has the Borrower or the beneficiaries for whom he acts received any partial payment or partial satisfaction of the damages which they claim on account of the death of Phillip Balay on October 7, 1971.

6. It is further understood and agreed between the parties that the purpose of this agreement is to so arrange a relationship between the parties hereto as to permit Lewis Burkett, Administrator of the Estate of Phillip Balay, and through him Mr. Balay's wife and daughter to have the present benefit of the sum of Eighty-five Thousand Dollars ($85,000.00) free from any and all chance of loss and free from any of the uncertainties that are inherent in all litigation. It is a further purpose of this agreement to retain for the Administrator the opportunity of recovering the full amount of damages from Crulo Trucking Co., Inc. sustained as a result of the death of Phillip Balay. Insofar as concerns the estate of George McMurry the purpose of this agreement is the certainty that the amount which George McMurry or his estate will have to pay because of the death of Phillip Balay will never be in excess of Eighty-five Thousand Dollars ($85,000.00).

7. This agreement shall be binding upon the parties, and their respective successors, and assigns.

Crulo raises a number of assignments of error concerning the conduct of the trial, the jury instructions, irregularities regarding the jury verdict, the judgment on the verdict, and sufficiency of the evidence. We shall not address each assignment of error since our consideration of fewer than all the issues dictates that we reverse the trial court.

Crulo alleges that the trial court erred in denying its motion for a separate trial and that Crulo was denied a fair

trial by reason of the participation of McMurry in the trial as a co-defendant. These complaints, as well as most of the other assignments of error, are rooted in the execution of a loan receipt agreement between Burkett and McMurry and matters consequent and attributable thereto. Since the loan receipt agreement is a significant and pervasive factor in this appeal, the concept deserves some preliminary discussion.

A loan receipt agreement, in its simplest form, provides that one with potential liability to a claimant will advance funds in the form of a non-interest loan to the claimant in order that the claim may be prosecuted against another who is also potentially liable for the claim. In return for the funds advanced, the claimant agrees that he will not sue or will not seek to enforce a judgment against the lender and will repay the loan according to some formula based upon the claimant's recovery against the other party. Such an agreement, then, serves to limit the liability of one against whom a claim might be pressed and, at the same time, gives the claimant an immediate "bird in hand" instead of forcing him to await but possible recovery following protracted litigation.

The use in Indiana of loan receipt agreements has been expressly approved in *Northern Indiana Public Service Company* v. *Otis* (1969), 145 Ind. App. 159, 250 N.E.2d 378 and *American Transport Co.* v. *Central Indiana Ry. Co.* (1970), 255 Ind. 319, 264 N.E.2d 64. That is not to say, however, that either the form or the effect of such agreements is well established at law. The same ingenuity that conceived the loan receipt agreement is now being applied to devise innumerable variations. Correspondingly, the courts are frequently called upon to determine the legal effects of those variant forms and to provide legal parameters for their use.

The validity of the loan receipt agreement in the case at bar

is not being questioned. What is at issue is a specific effect of that agreement.

Crulo's motion for a separate trial was made after Crulo became aware, on December 31, 1974, of the loan receipt agreement being negotiated between Burkett and the attorney for McMurry and his successors. As grounds for a separate trial, Crulo contends that counsel for McMurry and counsel for Burkett had already decided the issue of negligence as evidenced by the admission of negligence in the loan receipt agreement. Further, Crulo contends that same agreement also limited McMurry's liability to Burkett, and, therefore, at trial there were no litigable issues remaining between Burkett and McMurry. Crulo maintains that McMurry's only purpose in participation in trial as a co-defendant was to assist Burkett in obtaining a high verdict against Crulo so that McMurry could recover the "loan" made by the terms of the agreement.

Ind. Rules of Procedure, Trial Rule 42 (B) provides in pertinent part:

> "(B) *Separate Trials.* The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim * * * or of any separate issue . . . ."

While TR. 42 (B) gives the trial court discretion as to granting or denying separate trials, Crulo argues that the denial of its motion was an abuse of discretion and the subsequent procedure of the trial was prejudicial to Crulo and denied Crulo a fair trial. Particularly, by the order book entry for the conduct of the trial, McMurry was given procedural rights consisting of separate participation in the jury selection process, separate opening statement and final argument, and separate presentation of evidence and cross-examination of witnesses. Crulo complains that McMurry exercised those rights essentially to the benefit of Burkett.

We must agree, under the facts of this case, that Crulo was entitled to a separate trial. The loan receipt agreement, admitting McMurry's negligence and limiting McMurry's liability for damages to the amount paid Burkett as a "loan", effectively foreclosed all justiciable issues as between Burkett and McMurry. We believe it is evident that there remained no dispute sufficient to support a trial between those two parties. McMurry, in fact if not in form, had ceased to be a defendant as to Burkett. Thus, McMurry's continued participation as a co-defendant in the trial could serve no useful purpose, but instead tended, either by chance or by design, to obfuscate the issues existing between the real parties in interest and to dilute the procedural rights of the other co-defendant, Crulo.

It is not enough to say that McMurry's continued participation in the trial was justified by his hope of recovering his "loan" to Burkett. By the act of advancing funds to Burkett, McMurry bought a limitation on his financial exposure for damages. After the loan was made, McMurry had no greater right to participate in the trial to protect his "loan" than would a stranger to the action who loaned Burkett money for the duration of the trial.

We are cognizant that the decision in *Northern Indiana Public Service Company* v. *Otis, supra,* (NIPSCO) affirmed the denial of a co-defendant's motion for separate trial, but we note that by the terms of the loan receipt agreement in NIPSCO, the participating co-defendant denied negligence and also could have suffered a levy of execution for any judgment in excess of the "loan" if judgment was rendered against that defendant alone. The facts in the instant case are distinguishable on that basis.

Having concluded that McMurry's participation in the trial was an impairment of Crulo's right to a fair trial, we cannot avoid the realization that a modicum of resourcefulness will permit a future Burkett and a future McMurry to enter into

a loan receipt agreement circumventing this holding to the same detriment of a future Crulo. Considering the loan receipt agreement's potential for abuse, we have, by this holding, applied a Band-Aid to an abcess.

Other jurisdictions have grappled with the loan receipt agreement and its sister, the "Mary Carter Agreement",[1] attempting to rectify and prevent various abuses.

First, we note that the Supreme Court of Nevada in *Lum* v. *Stinnett* (1971), 87 Nev. 402, 488 P.2d 347, in its consideration of a similar agreement, declared the agreement void and stated, "We deem agreements whereby insurance carriers agree to pay any consideration to foster litigation in which they are not interested, in order to avoid their own liabilities, contrary to law and public policy".

Non-disclosure of an agreement between a plaintiff and co-defendant has been of particular concern to the courts. As early as 1934, in *Trampe* v. *Wisconsin Telephone Co.* (1934), 214 Wis. 210, 252 N.W. 675, an agreement was held to be invalid primarily for the non-disclosure of it by the participating parties. The Court stated:

". . . . The deliberate withholding of information of the existence of the settlement of important matters so clearly imposed a ficticious suit upon the court that we are bound to hold that it impeded the regular administration of justice, that it resulted in the trial of issues which were not real, and the action should be dismissed."

The Supreme Court of Florida, in *Ward* v. *Ochoa* (1973), 284 So.2d 385, expressly rejecting secrecy provisions approved in *Booth* v. *Mary Carter Paint Co., supra,* stated:

"The search for the truth, in order to give justice to the litigants, is the primary duty of the courts. Secret agreements between plaintiffs and one or more of several multiple defendants can tend to mislead judges and juries, and border on collusion. To prevent such deception, we are compelled to hold that such agreements must be produced

1. See: Booth v. Mary Carter Paint Co. (Fla. App. 1967), 202 So. 2d 8.

for examination before trial, when sought to be discovered under appropriate rules of procedure. If the agreement shows that the signing defendant will have his maximum liability reduced by increasing the liability of one or more co-defendants, such agreement should be admitted into evidence at trial upon the request of any other defendant who may stand to lose as a result of such agreement. If defendants not directly affected by such agreement move for severance because of possible prejudice to them, the Court shall exercise its sound discretion in granting or denying such motion."

In *Daniel* v. *Penrod Drilling Company,* 393 F. Supp. 1056 (E. D. La. 1975), where there was an undisclosed agreement between the plaintiff and one of the co-defendants, the court set aside the jury verdict and granted a new trial saying:

". . . . Courts are not merely arenas where games of counsel's skill are played. Even in football we do not tolerate point shaving. It is perhaps because the trial is adversary that each side is expected to give its best, without secret equivocation. Counsel have no duty to seek ultimate truth in a system were the lawyer's duty is primarily to represent his client. But even if the lawyer has no duty to disclose the whole truth, he does have a duty not to deceive the trier of fact, an obligation not to hide the real facts behind a facade." 393 F. Supp. at 1060.

Even when a loan receipt agreement is disclosed, another knotty problem is often exposed. Assuming that an agreement is admissible to show a contractual relationship with reference to the interest of a witness or party in the litigation and any financial considerations that might influence the witness or party, *Pickett* v. *Kolb* (1968), 250 Ind. 449, 237 N.E.2d 105, a non-participating co-defendant may yet have a grave decision to make. As in the case at bar, the loan receipt agreement may be drafted with admissions and accusations so damning to the non-participating co-defendant that the co-defendant is placed in a dilemma. He must choose to suffer in silence damaging conduct at trial by the co-defendant participating in the agreement, or he must choose to explain that conduct to the trier of fact by offering into evidence the agreement with its statements calculated to frame the

offering party in the worst possible light. Though we are aware of this problem, we have found no decisions which have dispositively dealt with it.

Our purpose in discussing the above problems is not to set forth any firm rules, but rather, it is our hope that by firing a shot across the bow at this time, we might discourage potential misuse of the loan receipt agreement in the future. Though the advancement of funds through the use of such agreements is a significant and commendable benefit to a damaged plaintiff and is to be encouraged, the courts and counsel, as officers of the courts, must exercise scrutiny and restraint to insure that a non-participating co-defendant is not deprived of his right to a fair trial.

Crulo raises another assignment of error that we shall address as it may reoccur in a subsequent trial. Crulo posits as error the trial court's refusal to give Crulo's tendered Instruction No. 2 which was an instruction on an independent contractor defense.

## TENDERED INSTRUCTION NO. 2

"I instruct you members of the jury that whether a person is an 'employee' or an 'independent contractor' is a fact to be determined from the evidence. An 'independent contractor' is one who makes an agreement with another to do a piece of work and retains in himself control of the means, methods and manner of producing the result. The fact that the work is to be done under direction and to the satisfaction of certain persons representing the employer does not render the person who agreed to do the work an 'employee'. You should consider the attitude of the parties toward each other, the nature of the work and all relevant circumstances."

Burkett asserts, and apparently the trial court agreed, that since Burkett had characterized McMurry only as an agent and not as an employee, the instruction would have been confusing to the jury and was, therefore, properly refused.

Burkett's assertion that the jury would have been confused by the instruction is probably correct, but the fault lies not

with Crulo's instruction. The fault lies primarily with the confusion that exists in the law concerning the distinction between an agent and a servant or employee and concerning when the doctrine of *respondeat superior* is applicable. The courts have contributed to this confusion by loose terminology in decisions. Indeed, the agency instruction in the *Indiana Pattern Jury Instructions*,[2] which was given in the case at bar, is misleading in this respect.

There is a semantic problem. Employees, servants, and independent contractors, as well as other categories of persons, may, in the proper circumstances, he described as agents. Professor Seavey classifies all agents as either servants or non-servants and designates the latter as a type of independent contractor. W. SEAVEY, HANDBOOK OF THE LAW OF AGENCY § 6 (1964). While "employee" and "servant" may have variant connotations, modern case law tends to treat the words as virtually synonymous in agency applications. Although Burkett seems to view "agent" and "independent contractor" as mutually exclusive descriptions, they are not. An independent contractor may well be an agent. An example is an attorney representing a client.

Where a non-servant agent (independent contractor) has caused harm by his negligent physical activities, the doctrine of *respondeat superior* is not applicable to make the principal liable to a third person. *SEAVEY, supra* § 91. A theory of defense argued by Crulo at trial was that McMurry was an independent contractor. Evidence consistent with this theory was presented, and no other instruction was given on this theory. It is reversible error for a trial court to refuse an instruction covering an essential element of the case when it is supported by some evidence, is consistent with the theory of the case, and where there is no other instruction covering that area of the law.

2. Instruction 13.21.

*Jackman* v. *Montgomery* (1974), 162 Ind. App. 558, 320 N.E. 2d 770.

Burkett's case against Crulo was founded on the incorrect premise that a showing of agency alone, without an additional showing of a master-servant relationship, would bring the doctrine of *respondeat superior* into play. Instructions given to the jury reflected that premise. That Burkett's case and the instructions on that case were flawed, does not diminish Crulo's right to a correct instruction on its theory of defense. The trial court's failure to give the instruction constituted reversible error.

As we reverse for the reasons contained herein, we need not reach other assignments of error raised.

Reversed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 355 N.E.2d 253.