CITY OF BLOOMINGTON, HAROLD E. VOYLES, GRETNA K. VOYLES, STATE OF INDIANA AND INDIANA STATE HIGHWAY COMMISSION *v.* ERIS HOLT, ADMINISTRATOR OF THE ESTATE OF WILMA H. HOLT.

[No. 1-675A101. Filed April 19, 1977. Rehearing denied May 23, 1977.]

*Theodore L. Sendak,* Attorney General, *Susan J. Davis,* Deputy Attorney General, for appellant.

*Vernon J. Petri, Richard W. Lorenz, John J. Fuhs,* of Spencer, *David S. McCrea, McCrea & McCrea,* of Bloomington, for appellee.

LYBROOK, J.—Defendants-appellants, State of Indiana (State) and Indiana State Highway Commission (Commission), appeal from a judgment in favor of plaintiff-appellee, Eris Holt. Holt, administrator of his wife's estate, initiated this wrongful death action alleging that his wife's death was caused by defendants' conduct. Holt was awarded $100,000

after a jury trial, and from this judgment the State and the Commission appeal.

The following issues are presented for our review:

(1) Whether the court erred in refusing to prohibit defendants Voyles from actively participating in the trial.

(2) Whether the trial court erred in refusing to declare a loan receipt agreement between defendants Voyles and plaintiff void.

(3) Whether the court erred in refusing to allow testimony by the plaintiff Eris Holt as to the loan receipt agreement, the amount of the loan, and the relationship between the parties.

(4) Whether the court erred in refusing to change the order of closing arguments so that the Voyles would not be last.

(5) Whether the court erred in giving to the jury, over State's objections, Court's instruction number two (2).

(6) Whether the court erred in refusing certain testimony by witness, Thomas Calderwood.

(7) Whether the trial court erred in prohibiting testimony which would diminish plaintiff's damages for loss of services.

(8) Whether the court erred in prohibiting testimony as to the fact that any other lawsuit had been filed as a result of this accident.

(9) Whether the court erred in allowing, over the State's objection, testimony by expert witness Joe Haag as to the standards used in 1974 for laying water pipes beneath roadways.

The facts most relevant to these issues reveal that on January 11, 1972, Wilma Holt was instantly killed when her car hit a patch of ice on State Road 37 near Bloomington, causing it to spin out of control into the opposite lane where it was struck by a large truck. The ice was created from water escaping from a ruptured water pipe passing under State Road 37. This water pipe serviced the Voyles' residence.

Holt filed the original complaint on March 8, 1972, against the City of Bloomington (Bloomington) and Harold and Gretna Voyles (Voyles) claiming $120,000 in damages. The

complaint alleged that the accident was caused by Bloomington's negligent and careless construction and maintenance of the water line and highway or by negligent observation of property conditions by the Voyles or by a combination of both.

On November 8, 1972, plaintiff filed a Petition for Leave to Add a Party Defendant. The court granted said petition and plaintiff filed an amended complaint adding the State and the Commission as defendants and increasing the claim for damages to $360,000. The amended complaint alleged that the State and the Commission were negligent by failing to supervise and maintain State Road 37 in a safe condition in front of the Voyles' residence.

Sometime near the commencement of the trial, defendant Voyles and plaintiff Holt entered into a "loan receipt agreement". The first several issues to be considered in this appeal involve this "loan receipt agreement". Judge Robertson in *Burkett* v. *Crulo Trucking Co.* (1976), 171 Ind. App. 166, 355 N.E.2d 253 described a loan receipt agreement as follows:

> "A loan receipt agreement, in its simplest form, provides that one with potential liability to a claimant will advance funds in the form of a non-interest loan to the claimant in order that the claim may be prosecuted against another who is also potentially liable for the claim. In return for the funds advanced, the claimant agrees that he will not sue or will not seek to enforce a judgment against the lender and will repay the loan according to some formula based upon the claimant's recovery against the other party. Such an agreement, then, serves to limit the liability of one against whom a claim might be pressed and, at the same time, gives the claimant an immediate 'bird in hand' instead of forcing him to await but possible recovery following protracted litigation."

As a general rule, loan receipt agreements have been expressly approved for use in Indiana. *Burkett, supra; Northern Indiana Public Service Company* v. *Otis* (1969), 145 Ind. App. 159, 250 N.E.2d 378; *American Transport Co.* v. *Central Indiana Ry. Co.* (1970), 255 Ind. 319, 264 N.E.2d 64.

However, recently this settlement device has been the subject of both legal literature and criticism.[1] We determine, however, that the loan receipt agreement should remain valid for use in Indiana. This is so, particularly in light of *Burkett, supra,* which acknowledges that a defendant who can show that he has been prejudiced by the loan receipt agreement, has alternative courses which he may pursue to relieve the prejudice.[2]

## I.

The first issue for our consideration is whether the court erred in refusing to prohibit defendant Voyles from actively participating in the trial. Apparently State argued that the presence of Voyles as defendants in this case prejudiced the remaining defendants and therefore there should have been separate trials. As grounds for this motion the State maintains that:

> "In this case the loan receipt agreement was executed by plaintiff Holt and defendants Voyles prior to trial. It was not, however, filed with the court, and the other defendants, who were not given a copy of the agreement until several days into the trial itself, were precluded from making any pre-trial motions on the subject. The Voyles conducted no voir dire of the jurors. Mr. Rarick and Mr. Brown (prospective jurors in this trial) were briefly questioned in a routine fashion, and their responses revealed no bias. The Voyles however, struck from the panel those two jurors despite the absence of any indication that they were the type of jurors the defendants in this case would not have wanted. The defendants Voyles made no opening statement and conducted no cross-examination of the plaintiff's first two witnesses, Bonnie Lee Hacker and Arnold Flynn, who were both very familiar with the accident scene and had witnessed the icy condition in front of the Voyles' residence on January 11, 1972, the day of the accident. After the third witness, the Voyles began active participation,

---

1. McKay, *Loan Agreement: A Settlement Device that Deserves Close Scrutiny.* Valparaiso University Law Review Vol. 10, Number 2, Winter 1976.

2. It should be reiterated that as Judge Robertson held in *Burkett,* separate trials are subject to the trial court's discretion and must meet the standards articulated in Indiana Rules of Procedure, Trial Rule 42(B).

but appeared to behave like plaintiffs rather than defendants. Their questions on cross-examination were designed to point the finger at the other defendants and fill in any gaps left open by the plaintiff on direct. The Voyles had the additional advantage of being last to cross-examine, thus able to bring up items in their examination which the other defendants were unable to respond to or defend themselves against."

We find that the trial court did not err by denying appellants' motion concerning this issue.

First we must determine if the fact that defendants could not make pre-trial motions in regard to the loan receipt agreement resulted in prejudice to them. In the case of *Scott* v. *Krueger* (1972), 151 Ind. App. 479, 280 N.E.2d 336, it was held that a settlement agreement (in that case a covenant not to execute) reached between plaintiff and one of the defendants while the jury was deliberating was not improper. The court went on to say that, "covenants not to sue, covenants not to execute and loan receipt agreements are legal and are to be encouraged in the settlement of litigation." In *Krueger* the settlement agreemnt was entered into much later in the litigation than the settlement agreement in the case at bar. There the parties certainly had no opportunity to make pre-trial motions concerning said agreement. It would appear that the State would have us hold that settlement agreements must be entered into prior to the beginning of trial so as to allow parties the opportunity to make pre-trial motions regarding such agreements. The courts have not required this in the past and we do not require this now.

Next, the State would have us believe that the failure of the Voyles to participate in voir dire by actually interrogating prospective jurors and then to strike two jurors from the panel "despite the absence of any indication that they were the type of jurors the defendants in this case would not have wanted" was prejudicial. The State cites no authority for this argument and we find that it has no

merit. Our search of the record reveals that no cause was given by Voyles when the two jurors were struck. It therefore seems that the jurors were struck by "peremptory challenges". This type of challenge may be exercised without cause and may be exercised arbitrarily and capriciously.[3] The right of a party to use of peremptory challenge is absolute and there is no area of discretion by which the trial court can deny this right. *Schroer* v. *Edward J. Funk & Sons, Inc.* (1968), 250 Ind. 480, 237 N.E.2d 247. We fail to find any prejudicial effect caused by the trial court allowing the Voyles to exercise their peremptory challenges.

Finally, appellants maintain that the mere presence of the Voyles as defendants in this case and the manner in which the Voyles conducted their defense was a deception to the jury and therefore prejudicial. Appellants maintain that the Voyles failed to make an opening statement, failed to cross-examine the first two witnesses, acted like a plaintiff when they did begin to take part in the trial, and had an unfair advantage by being allowed to have the final closing argument. This conduct is alleged to be prejudicial.

We do not comprehend how the Voyles' silence would have been prejudicial. The fact that the Voyles failed to make an opening statement or failed to cross-examine the first two witnesses would not be prejudicial to the other defendants, especially considering the fact that the other defendants were not denied their opportunity to do these things.

Appellants' contention that the Voyles acted more like plaintiffs than defendants is equally untenable. As was held in *Northern Indiana Public Service Company, supra,* quoting *Way* v. *Waterloo, Cedar Falls and Northern R.R.* (1947), 239 Ia. 244, 29 N.W.2d 867, that:

> " '. . . Invariably, as in this case, where joint tortfeasors are joined in the same suit, their defenses are antagonistic, for each, attempts to place the blame on the other.' "

---

3. *Juries:* 24 Ind. Law Journal 262 at 264 (1949).

In the case at bar we are not convinced that the Voyles were acting more like plaintiffs than defendants. Rather, it seems that the Voyles' defense was "antagonistic" and this antagonism is what the appellants base their contention on.

As to appellants' claim that it was prejudicial to them to allow the Voyles to have the final closing argument, we again disagree. The State apparently feels that since the Voyles negotiated and entered into a settlement agreement they were less of a defendant than Bloomington, State, or the Highway Commission. We recognize the widely held belief that it is advantageous to a party to have the final closing argument. Whether this belief is fact or fiction, it is fundamental that generally, all matters which relate to the orderly conduct of a trial, or are necessary to the proper administration of justice in a court, and are not regulated by precise statute or rule, are within the discretion of the court. 88 C.J.S. *Trial* § 36 (1957). Specifically, this exact question is one that has not yet been decided in Indiana. In *Schwam* v. *Reece* (1948), 213 Ark. 431, 210 S.W.2d 903 it was said:

> "Where there are two plaintiffs, each having the right to open and close, or where several defendants plead over against each other, the order of their argument as among themselves, rests within the sound discretion of the court."

See also, 88 C.J.S. *Trials* § 166 (1957).

In the case at bar we determine that the trial court did not err by allowing the Voyles to actively participate in the trial.

## II.

The second issue for our consideration is whether the trial court erred in refusing to declare the loan receipt agreement between defendant and plaintiff void. Appellants argue that the loan receipt agreement caused so many irregularities in the trial that it should have been declared void. Presumably these alleged irregularities are the same activities that appellants contended were prejudicial in issue one. Due to our dis-

cussion of these activities in the first issue we do not feel it is necessary to discuss them again. It is only necessary to say that loan receipt agreements have been expressly approved in Indiana. *Northern Indiana Public Service Company, supra*; *Burkett, supra.* We find no compelling reason to have the agreement in the case at bar declared void. This is particularly so since we have not seen the agreement because a copy was not included in the record.

### III.

The third issue for our consideration is whether the court erred in refusing to allow testimony by the plaintiff Eris Holt about the loan receipt agreement, its amount, and the relationship between the parties.

Appellants argue that they should have been allowed to solicit information about the loan receipt agreement from plaintiff during the trial to give the jury a better understanding about the various relationships between the parties. They maintain that although the court attempted to compensate for the exclusion of this evidence by giving an instruction on the agreement and allowing mention of it in closing arguments the error was not alleviated but rather compounded. The instruction given by the court reads as follows:

> "You are instructed that there exists in this case a loan receipt agreement by and between the plaintiff, Eris Holt and defendants Harold E. Voyles and Gretna K. Voyles.
>
> "That in the agreement the Defendants Harold E. Voyles and Gretna K. Voyles continue to deny liability but enter into said agreement because of the uncertainty of the result of this case.
>
> "That plaintiff entered into the agreement to receive some money at this time without jeopardizing his claim against the City of Bloomington, State of Indiana or the Indiana State Highway Commission.
>
> "That said agreement provides for a loan by defendants Harold E. Voyles and Gretna K. Voyles to plaintiff of a sum of money repayable to Defendants Voyles only in the

event that plaintiff receives a judgment from the City of Bloomington and/or the State of Indiana and/or the Indiana State Highway Commission.

"You are not to consider the loan agreement in determining the liability of the City of Bloomington, Harold E. Voyles, Gretna K. Voyles, the State of Indiana, or the Indiana State Highway Commission. Nor should you consider the agreement in determining the amount of damages, if any.

*"You're only to consider the agreement as it effects* [sic] *the interests of the parties."* (Emphasis added).

We fail to see how this instruction compounded the error of excluding evidence about the loan receipt agreement. In fact, the trial court, may cure errors it may have committed in ruling out evidence in its instructions to the jury, where in those instructions the court assumes the existence of the fact sought to be established by the evidence in question and therefore gives the party who sought to have the evidence admitted all of the benefits that would have been derived from its admission. 4A C.J.S. *Appeal and Error* § 754 (1957).

We find that if any error occurred by the exclusion of testimony about the loan receipt agreement from evidence, such error was harmless due to the instruction given the jury by the court. The appellants apparently intended to utilize evidence concerning the loan receipt agreement to reveal the relationship between the parties in the litigation. The instruction clearly advises the jury that it is to only consider how the agreement affects the interests of the parties in the litigation. The instruction therefore gives the appellants the benefits that would have been derived from the admission of the evidence making any error in the exclusion of such evidence harmless. This is especially true, considering that throughout the course of the trial the State requested that the agreement itself not be introduced into evidence.

## IV.

The fourth issue for our consideration is whether the trial court erred in refusing to change the order of closing argu-

ments so the Voyles would not be last. This question was raised in the first issue as being one of the occurrences during the trial that was prejudicial. Due to our discussion of this question in the disposition of the first issue we find it unnecessary to dwell on it here. Suffice it to say, as we said earlier:

> "Where there are two plaintiffs, each having the right to open and close, or where several defendants plead over against each other, the order of their argument as among themselves rests within the sound discretion of the court." *Schwam, supra.*

In the case at bar we conclude that the trial court did not abuse its discretion by allowing the Voyles to have the final closing argument instead of one of the other appellants.

## V.

The fifth issue for our consideration is whether the court erred in giving to the jury, over the State's objections, Court's Instruction number 2. It is argued in appellants' Motion to Correct Errors that such instruction was incomplete and misleading in that it did not disclose the amount of the loan. First, appellants do not explain, nor do we understand, why the disclosure of the amount of the loan is necessary to keep from misleading the jury. Secondly, and most importantly, the appellants have waived this alleged error. In the case of *Dustman et al.* v. *Ratliff* (1927), 87 Ind. App. 360, 158 N.E. 596, it was argued on appeal that the instructions given the jury were incomplete and erroneous, because they omitted the element of contributory negligence. The court responded, "we need only to say that if appellants deemed it proper that the jury should be instructed upon the question of contributory negligence, they should have tendered instructions to that effect." In the case at bar appellant claimed the instructions were erroneous because they omitted the element of the amount of mony tendered for the agreement. If, as in *Dustman,* the appellants deemed it proper that the jury

should be instructed upon this element, they should have tendered instructions to that effect. Not having done so we do not need to determine whether such instructions should have been given had they been tendered.

## VI.

The sixth issue for our consideration is whether the trial court erred in refusing certain testimony by an expert witness, Thomas Calderwood. Appellants maintain that although the judge allowed Calderwood to testify about some things such as his estimate of the speed of the vehicle, the judge improperly refused to allow Calderwood to testify about the "role of the ice" and "the role of the driver's error" in the causation of this accident.

The acceptance of opinion evidence by experts is within the sound discretion of the trial court and will not be disturbed unless there is a clear showing of an abuse of that discretion. *Northern Indiana Public Service Company, supra.* Expert testimony may be excluded from evidence when it concerns matters which the jury may determine as well as the expert or when it concerns matters in which the expert would be determining questions of fact for the jury. *Briney* v. *Williams et al.* (1968), 143 Ind. App. 691, 242 N.E.2d 132; *Brunker* v. *Cummins* (1892), 133 Ind. 443, 32 N.E. 732.

In the case at bar the question of whether the ice or an error by the driver caused the accident is essential in determining the defendants' liability. The trial court apparently determined that when the facts of this case were placed before the jury, the jury would be as qualified as the expert to determine whether or not the ice caused the accident. Additionally, the record clearly reveals that Calderwood's opinions were based upon assumptions about facts and he admits that many of his assumptions rely on the expertise of the person investigating the scene at the time of the accident. These assump-

tions and Calderwood's reliance upon data obtained by other people do not add to the reliability of his expert testimony. The expert's opinion about such facts as the speed of the car would surely aid the jury in its determination of fact. However, we do not feel that the trial court abused its discretion by deciding that the role of the ice in this accident should be determined by the jury.

## VII.

The seventh issue for our consideration is whether the trial court erred in prohibiting testimony which would diminish plaintiff's damages for the loss of his wife's services. Appellants argue that it was error for the trial court to allow the plaintiff to introduce evidence concerning damages sustained by the loss of his wife's services and not allow evidence which would tend to mitigate these damages.

The general rule in Indiana is that in a wrongful death action a right of action or an amount of recovery is not affected by the fact that the surviving spouse has remarried or contemplates remarriage. *Wabash R. Co.* v. *Gretzinger* (1914), 182 Ind. 155, 104 N.E. 69; *Consolidated Stone Co.* v. *Morgan* (1903), 160 Ind. 241, 66 N.E. 696. Appellants argue that this rule is not applicable in the present case for several reasons. First, it is claimed that in the case at bar the plaintiff is "living with" another woman and not remarried or contemplating remarriage. Second, it is argued that the general rule applies only if the surviving spouse is a woman and it does not apply in a case as the one at bar where the surviving spouse is a man contemplating remarriage to a woman. No authority is cited for these distinctions and we determine that they do not remove the present case from within the general rule. The court did not err in refusing to allow testimony from the woman referred to above and sustaining plaintiff's Motion in Limine prohibiting mention of "the fact or probability or possibility

of remarriage of the plaintiff including with whom he is residing."

## VIII.

The eighth issue for our consideration is whether the trial court erred in prohibiting testimony concerning the fact that any other lawsuit had been filed relative to this accident. Appellants argue that while any information about the existence of another lawsuit relative to this accident may be irrelevant, such information would not be prejudicial. A motion in limine, it is argued, is to be used to exclude prejudicial evidence and not merely irrelevant evidence, therefore, the trial court erred in granting the motion in limine as to the point. It was said in *Burrus* v. *Silhavy* (1973), 155 Ind. App. 558, 293 N.E.2d 794 and restated in *Baldwin* v. *Inter City Contractors Service, Inc.* (1973), 156 Ind. App. 497, 297 N.E.2d 831, that a motion in limine has a very restricted use that flows from the trial court's power to exclude evidence. This use is to exclude *prejudicial* matters. "The exclusion by the trial court may encompass both prejudicial *and irrelevant* matter, but the primary purpose for granting the motion must be that the matter excluded would be prejudicial to the moving party." (Emphasis added). Quoting *Bridges* v. *City of Richardson* (1962), 163 Tex. 292, 354 S.W.2d 366 it was said:

> " 'It is the prejudicial effect of the questions asked or the statements made in connection with the offer of the evidence, not the prejudicial effect of the evidence itself, which the motion in limine is intended to reach. . . .' " *Burrus, supra.*

In the case at bar the trial court, using its inherent power, determined either that evidence of another trial arising from the same accident might be prejudicial or irrelevant, or that the way in which questions might have been asked or statements made in connection with the offer of such evidence might have been prejudicial. While the primary purpose of

a motion in limine may be to exclude prejudicial evidence, it may also be used to exclude irrelevant matter. We find no error in the trial court's exclusion of this evidence by granting plaintiff's motion in limine.

## IX.

The final issue for our consideration is whether the trial court erred in allowing testimony by the expert witness, Joe Haag, concerning the standard for laying water pipes. Appellants maintain that Haag was testifying as to the 1974 standards for laying water pipes and not the standards of 1948, the year when Highway 37 was built. They claim that Haag's testimony was irrelevant and should not have been allowed into evidence. We do not agree.

The determination of whether a witness is qualified to give an opinion as an expert is within the trial court's sound discretion. *Matter of Adoption of Lockmondy* (1976), 168 Ind. App. 563, 343 N.E.2d 793. The extent of a witness' knowledge does not necessarily determine his competency. No precise knowledge is required if the witness shows such acquaintenance with the subject as to qualify him to give an opinion, the weight of his testimony depending upon the extent of his knowledge. *Parker et al.* v. *The State* (1893), 136 Ind. 284, 35 N.E. 1105; *City of Terre Haute* v. *Hudnut et al.* (1887), 112 Ind. 542, 13 N.E. 686.

In the case at bar the record reveals that Haag was not claiming special or precise knowledge about particular 1948 standards. He was only claiming such an acquaintance with the subject of laying water pipes that he could give an opinion or inform the jury about techniques utilized in laying water pipes. The trial court did not abuse its discretion in allowing Haag to inform the jury about these techniques and standards.

Finding no error, the trial court's opinion is affirmed.

Affirmed.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 361 N.E.2d 1211.