In the Matter of the Paternity of G.L.A., T.J.A., and S.L.A.

J.L.A., Appellant (Petitioner Below),

v.

T.B.S., Appellee (Respondent Below).

No. 2–581A151.

Court of Appeals of Indiana, Second District.

Jan. 28, 1982.

Donald R. Lundberg, Patricia Smith, Legal Services Organization of Indiana, Inc., Indianapolis, Ralph Ogden, Wilcox, Ogden & Dumond, Indianapolis, Priscilla Ruth MacDougall, Madison, Wis., for appellant.

John D. Schiff, Buck, Berry, Landau, Breunig & Quinn, Indianapolis, for appellee.

SHIELDS, Judge.

Appellant, J.L.A. (Mother), appeals those parts of the judgments in three paternity actions which require the children involved to bear the surname of the biological father, T.B.S. (Father). Mother raises three issues on appeal.[1] However, we reverse because the judgments were not supported by sufficient evidence and are contrary to law, and therefore do not discuss the remaining issues. *Ed Martin Ford Co., Inc. v. Martin*, (1977) 173 Ind.App. 428, 363 N.E.2d 1292.

In determining the sufficiency of the evidence, this court may not determine credibility of witnesses or weigh the evidence. We will uphold the decision of the trial court if there is evidence of probative value to support it. *Travelers Indemnity Co. v. Armstrong*, (1979) Ind.App., 384 N.E.2d 607. In this case, however, the record is totally devoid of evidence on the issue of whether a change of the children's surname from that of Mother to that of Father is in their best interests. In *D.R.S. v. R.S.H.*, (1980) Ind.App., 412 N.E.2d 1257, we held a trial court does have the power to order the surname of an illegitimate child changed, however, to do so the court must determine such a change is in the best interest of the child.

The evidence presented at trial is as follows: Mother's name, place and date of birth, marital status; name, date of conception, date and place of birth of each of the

---

1. Father, the appellee, has not filed a brief in this case, therefore, Mother need present only a *prima facie* case of reversible error to prevail on appeal. *Costanzi v. Ryan*, (1978) Ind.App., 370 N.E.2d 1333.

three children; the claim and admission of paternity; the hospital bill incurred as a result of S.L.A.'s birth was paid by Medicaid; the provisions of the parties' agreement ($25 per week per child support, custody with Mother, and visitation every third weekend); Father had provided support for T.J.A. *within* the past three years; Father has health and hospital insurance that should cover the children; Father's name, social security number, date and place of birth; Mother is currently on ADC; and, finally, Mother did not see any reason to change the children's surname and, in fact, did not need Father's help in supporting the children after she got back to work.[2]

The import of this evidence is paternity, custody, support, and visitation as allowed by the provisions of I.C. 31–6–6.1–1 et seq. It fails to reach the issue of whether it is in the best interests of the children to change their surname.[3] Rather, the record reveals only the unsworn statement of Father that he desired to have the children's surname changed and the testimony of Mother that she saw no reason for the name change and did not need Father's support after she returned to work.

■ The child of an unwed mother bears the mother's name at birth. I.C. 16–1–16–15 (Burns Code Ed.). Consequently, either party to a paternity action who seeks a different surname for the child involved is seeking affirmative relief. It logically follows that that party bears the burden of persuasion on the issue. In this case Father did not fulfill this burden which is placed upon him because he is the moving party.

Furthermore, the record reveals the trial court ordered the change in the children's surname based upon an erroneous perception of the law. The trial court stated it was the general practice of the court to

change the surname of children in paternity proceedings to that of the father in the absence of good reasons shown to the contrary. (R. at 119). This statement demonstrates the trial court indulged in erroneous presumptions as to burden of proof.

In addition, the trial court stated:

"The court has to make a decision, I guess. I always point out that the man who is going to support the children should have the children in his name unless there is some valid strong reason, like he is a murderer or a criminal of some kind that would keep him from—the children from revering his name and carry it, you see. I don't know."

(R. at 142)

The statement reveals the trial court indulged in an erroneous presumption that, absent extreme circumstances, a child should share the surname of its biological father as long as the father is contributing to its support. This presumption is incorrect because it ignores the proper standard, that of whether the change is in the best interest of the child. The fact the biological father is contributing to the support of the child (as is the biological mother) does not establish *per se* that it is in the best interest of the child to share the surname of the father.

Because the decisions of the trial court are not supported by sufficient evidence and are contrary to law, we reverse and remand this cause for further hearing on the issue of the name change.

SULLIVAN, J., concurs, with separate opinion.

BUCHANAN, C. J., dissents with opinion.

2. The record is devoid of evidence of Father's contact, if any, with the children.

3. Evidence which we deem relevant to the issue of the child's best interest is, for example, evidence of the surname by which the child is known by "family" and the community; the convenience, if any, of retaining or assuming the surname of its custodial parent; the existence of property owned by the child under a

particular surname, such as a U. S. savings bond; the identification of the child by a particular surname with private or public entities, such as insurance carriers and Social Security Administration; the degree of confusion to the child engendered by a change in surname; and, if a child is of sufficient maturity, the child's desire as to its surname.

SULLIVAN, Judge, concurring.

While I concur in the opinion by Judge Shields, I deem it necessary to make an observation relative to the quotations from *D.R.S. v. R.S.H.* (2d Dist. 1980) Ind.App., 412 N.E.2d 1257 which are contained in Judge Buchanan's dissent, and to avert any possible misinterpretations concerning the narrow holding of that case.

The dissent misinterprets the extent of the holding in *D.R.S. v. R.S.H., supra.* The portions of that decision quoted in Judge Buchanan's dissent here did not and do not represent a majority position. In *D.R.S., supra,* I did not agree that the subjective desires of the father or a tradition of having the child bear the paternal surname should be a significant factor, if any factor at all. To the contrary, my separate opinion in that case stated that "[t]he overriding, if not only, consideration must be the best interest of the child." 412 N.E.2d at 1266–67.

BUCHANAN, Chief Judge, dissenting.

Unlike the majority, I conclude that the trial court's order was supported by sufficient evidence showing the change of name to be in the best interests of the children.

The record discloses that T.B.S., who had provided some child support within the three years preceding the hearing, agreed to pay support of twenty-five dollars per week per child in the future. He had maintained contact with the children in the past, *Record* at 120, and asked the court to establish overnight visitation rights. He agreed to provide health insurance for the children, *Record* at 149–50, and expressed a desire for them to bear his surname. Given such commendable expressions of paternalism on the father's part, the trial court's action is understandable—and supportable.

This evidence is virtually identical to that deemed sufficient by the majority in *D.R.S. v. R.S.H.*, (1980) Ind.App., 412 N.E.2d 1257 (transfer not sought). The father, R.S.H., had made child support payments, testified to his willingness to provide support in the future, and indicated his desire to exercise visitation rights. He agreed to pay one-half of the medical expenses associated with the child's birth along with one-half of all future medical bills not covered by insurance. He also wished to have the child bear his surname.

In upholding the trial court's order changing the child's name, the majority opinion emphasized the father's traditional interest in having his child bear the paternal surname. Adherence to this tradition

> would be consistent with the public policy favoring preservation of the father-child relationship. And, perhaps more importantly, such a change avoids a "fair indication that the child is illegitimate."

Ind.App., 412 N.E.2d at 1265 (quoting *Petition of Harris*, (1977) W.Va., 236 S.E.2d 426).

It should be stressed that in reviewing the sufficiency of the evidence, this court will not presume that a trial court has erred, but rather will indulge in any reasonable presumption supporting the judgment. *First National Bank of Mishawaka v. Penn-Harris-Madison School Corp.*, (1970) 255 Ind. 403, 265 N.E.2d 16; *D.R.S., supra; VanBibber v. Norris*, (1980) Ind.App., 404 N.E.2d 1365; *In Re Dreflak*, (1980) Ind. App., 402 N.E.2d 1284. The conclusion reached in *D.R.S., supra*, is relevant to this case:

> [W]hen, as here, there is evidence that a natural father acknowledges and supports his child born out of wedlock, takes an interest in the child's welfare, and is not guilty of such wrongdoing as would render retention of his name positively deleterious to the child, requiring the child to bear his surname is not an abuse of discretion.

Ind.App., 412 N.E.2d at 1266.

The judgment should be affirmed.