**Harold W. Blake, Guardian Ad Litem of Minor Child K.E., Guardian Ad Litem–Appellee.**

No. 32A01–8712–JV–313.

Court of Appeals of Indiana,
First District.

Sept. 13, 1988.

As Corrected on Denial of Rehearing
Nov. 21, 1988.

Frank E. Spencer, Indianapolis, for petitioner-appellant.

Fred W. Isaacs, Brownsburg, for respondent-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

E.W.R. appeals the trial court's decision that the surname of his child shall remain the last name of the child's unwed mother. E.W.R. also appeals the trial court's order requiring that E.W.R. pay appellate attorney fees for T.L.C., the mother of his child. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## FACTS

On November 12, 1986, a baby boy was born out of wedlock to T.L.C. and E.W.R. At the time the child was born, T.L.C. was seventeen years old and E.W.R. was nineteen years old. Both parties were unmarried, residing with their respective parents, and dependent on them for financial security. T.L.C. gave the child her last name. One week prior to the birth of the child, E.W.R. initiated a paternity petition in the Hendricks Circuit Court. In this petition E.W.R. requested the court to establish the paternity of the child, make provision for the child's care, custody, support, and maintenance, and to establish visitation arrangements for the non-custodial parent. Subsequently, the parties stipulated that E.W.R. was the father of the child and that T.L.C. would have custody of the child.

On January 22, 1987, a hearing was conducted upon three remaining issues: (1) the amount of child support to be paid by E.W.R.; (2) what constituted reasonable visitation by E.W.R. with the child; and (3) what the surname of the child would be. The trial court granted T.L.C.'s pre-trial, oral request for proposed findings of fact and conclusions of law. The court approved all pre-trial stipulations of the parties except that T.L.C. should have custody of the child. The court appointed a guardian *ad litem*, Harold Blake, to arrange parent counseling for the parties.

Blake filed a report with the court on February 17, 1987, recommending that T.L.C. be granted custody of the child. The report further stated that E.W.R. should be granted expanded visitation with the child away from the mother's house and that E.W.R. should pay $35.00 per week in child support. Blake also recommended that both parties attend further counseling sessions at the Indianapolis Institute for Marital and Family Relations and the child's surname should be that of the child's father.

On March 11, 1987, the trial court issued a partial judgment awarding T.L.C. custody of the child and requiring E.W.R. to pay $35.00 per week in child support. The court also ordered the parties to attend counseling sessions with a court appointed advisor, Bill Alexander, regarding issues of parenting, visitation, and behavior in the child's best interests. The court stated that further disposition of the case would occur after the court received and evaluated Alexander's report.

On April 8, 1987, T.L.C. filed a motion for receipt of report of court appointed expert. The court responded by entering an order requiring the guardian *ad litem* to distribute the completed report to both attorneys. On July 16, 1987, Alexander filed his final report, which stated that the parties had successfully completed a parenting program and which provided recommendations to which the parents had agreed, including the fact that T.L.C. would have legal custody of the child and the specifics involved in E.W.R.'s visitation of the child. However, as the report noted E.W.R. and T.L.C. could not agree on the child's surname nor on the specific guidelines for support payments. However, Alexander recommended that the child have T.L.C.'s last name and noted that E.W.R. wanted the issue decided by the court. In a letter attached to the report and also filed in open court, Alexander stated that E.W.R. attended the counseling sessions

"grudgingly, hesitantly, even at times belligerently". Record at 167. Alexander went on to state that: "He [E.W.R.] did although make the effort to learn about parenting skills, showing enough progress to enable me to set the conditions as contained in the enclosed agreement." Record at 167. Alexander then stated that T.L.C. approached the session with vigor and enthusiasm. *Id.* While T.L.C. affixed her signature to the report tendered by Alexander, E.W.R. refused to do so because of the clause concerning the child's surname. When E.W.R. subsequently received a revised version of the report still containing the surname recommendation, but with E.W.R.'s objections noted, E.W.R. attempted to contact Alexander to inform him that he still objected to the contents of the report. However, E.W.R. was unsuccessful in reaching Alexander.

On July 24, 1987, the trial court issued its final judgment which granted physical custody of the child to T.L.C. with provisions for reasonable visitation by E.W.R. The court required E.W.R. to continue to pay $35.00 per week in child support and found that the child was to retain his mother's surname. On September 22, 1987, E.W.R. filed a motion to correct errors which was denied on November 3, 1987. E.W.R. then instituted this appeal and in response T.L.C. filed a motion for order granting allowance for appellate attorney's fees. The court granted this motion on December 2, 1987, ordering E.W.R. to pre-pay T.L.C.'s attorney $4500.00 in appellate attorney fees.

## ISSUES

While the appellant presented six (6) issues for review, this court has consolidated those issues into the following three allegations of error:

1. Did the court err in failing to enter special findings where appellee's pre-trial, oral request to do so was granted?

2. Did the trial court err in finding that the child should have the mother's surname where the trial court ordered and received a report from a court appointed expert, Bill Alexander, and that report was never introduced into evidence?

3. Did the trial court err in *ex parte* ordering E.W.R. to pre-pay T.L.C.'s attorney $4,500.00 in appellate attorney fees absent any findings of need, ability to pay or reasonableness of the fee?

## DISCUSSION AND DECISION

### Issue One

█ The appellant first contends that the trial court erred in entering the final judgment without special findings of fact upon which the judgment was based. Prior to the introduction of evidence the appellee orally requested that special findings be entered. The trial court granted this motion and ordered each party to submit proposed special findings. The parties complied with this order, but upon entering final judgment the trial court declined to include special findings of fact.

Where no written request for special findings is filed with the court, the trial judge is under no obligation to make such findings. Indiana Rules of Procedure, Trial Rule 52(A); *Weiss v. Weiss* (1974), 159 Ind.App. 231, 236, 306 N.E.2d 120, 123; *Jay Clutter Custom Digging v. English* (1979), 181 Ind.App. 603, 607, 393 N.E.2d 230, 233. Thus despite the fact that the trial court granted the oral request for special findings, the compelling force of T.R. 52(A) was not triggered absent a written request. Therefore, given the deficiency of the motion and the fact that the party claiming error is not the party responsible for the original motion, the trial court's failure to enter special findings does not constitute reversible error.

### Issue Two

█ E.W.R. next contends that the trial court abused its discretion in allowing the child to retain the mother's surname. He rests this assertion of error on the grounds that the trial court allegedly relied on the report filed by Bill Alexander in making the name determination. This report was never introduced into evidence and neither party had an opportunity to cross-examine Alexander, the author of the report.

The trial judge cited to "the concepts set out in Federal Rule of Evidence 706" in support of his appointment of Alexander. Record at 162. The Federal Rules of Evidence are not controlling in evidentiary matters in the State of Indiana. However, Alexander's appointment was valid under Indiana Code section 31–6–6.1–10(a) which provides:

"Upon finding that a man is the child's biological father, the court shall, in the initial determination, conduct a hearing to determine the issues of support, custody, and visitation. Upon the request of any party or on the court's own motion, the court may order a probation officer or caseworker to prepare a report to assist it in determining these matters."

Therefore, in so far as Alexander's assistance was in determining issues of support, custody and visitation, his assistance was appropriate. The trial judge appointed Alexander to serve just this function; the appointment reads in pertinent part:

"the Court hereby appoints Bill Alexander of the Indianapolis Institute for Marital and Family Relations as an expert to advise the Court regarding custody and visitation of the minor child of the parties before the Court makes any further decisions on those issues, in order to preserve the best interests of the child."

Record at 161. By statute the court was allowed to consider Alexander's advice only on specific issues. While failing to cite the applicable statute in the partial judgment, the trial court was obviously aware of the limited scope of Alexander's advisory role in that only the issues of custody and visitation were mentioned in the appointment. Therefore, the name determination was entirely outside the scope of Alexander's advisory position.

The appellant contends, however, that the wording of the preamble to the final judgment indicates that the trial court thought otherwise. That clause reads as follows:

"The Court having filed its Partial Judgment on March 11, 1987, and seeking advise [sic] from court appointed experts to complete its decision in this case, the Court having reviewed the filed and had the advise [sic] of court appointed experts, the Court now finds as follows:

"1. The name of the child shall be K_____ E_____ C_____."

Record at 171. While admitting to having sought and reviewed the advice of court appointed experts, the trial court does not indicate that this advice was weighed in determining issues inappropriate to its usage. Rather, we must presume that the trial judge considered only properly admissible evidence in arriving at a decision. *In re the Adoption of Thomas* (1982), Ind. App., 431 N.E.2d 506, 510, n. 5, *trans. denied.* Therefore, since we must assume that Alexander's report was not consulted in determining the surname of the child, the appellant's inability to cross-examine Alexander or to obtain a copy of Alexander's report is harmless error with respect to this issue.[1]

■ The question remains as to whether the trial court abused its discretion in allowing the child to retain the mother's surname. E.W.R. as the natural father of the baby bore the burden of persuasion upon seeking to change the child's surname to his own. *J.L.A. v. T.B.S.* (1982), Ind.App., 430 N.E.2d 433, 434. The biological father of an illegitimate child is not entitled to change the child's surname to that of the father absent evidence that to do so is in the child's best interest. *Id.* While the evidence before the trial court as to this issue was scant and consisted mainly of emotional pleas and personal beliefs, we cannot say that the trial court abused its discretion in finding that E.W.R. failed to

---

1. Had the reports been relied upon by the trial court to determine an issue later appealed due to counsel's inability to cross-examine the author of those reports, we note that due process concerns might have been implicated. The child custody provisions of the divorce chapter allow the trial court to appoint advisory experts. Indiana Code section 31–1–11.5–21(e). However, that statute mandates that the advice be written and be made available to counsel upon request. Counsel may also cross-examine the court appointed expert. The child custody provision of the paternity chapter also allows the appointment of advisory experts, but provides no such procedural safeguards. Indiana Code section 31–6–6.1–10(a).

meet his burden of persuading the court that it was in the child's best interest to bear the father's surname.

### Issue Three

The appellant's final contention is that the trial court erred in *ex parte* ordering E.W.R. to pre-pay T.L.C.'s attorney $4500.00 in appellate attorney fees. The appellant raises several sub-issues regarding this question; since we reverse we will discuss only those issues necessary to our decision. E.W.R. argues that the court had no authority to grant T.L.C.'s motion for appellate attorney fees since E.W.R. instituted the paternity action. E.W.R. further argues that even if the trial court did possess the authority to order him to pay appellate attorney's fees, the trial court erred in entering such an order *ex parte*.

■ The appellant is mistaken in his assertion that the trial court did not possess the authority to award appellate attorney fees. The statute providing that, in a paternity action, the court may tax as costs the reasonable attorney fees "incurred in maintaining any proceeding under this chapter" authorizes an award of attorney's fees incurred in defending against an appeal. Indiana Code section 31–6–6.1–18(a); *O.S. v. J.M.* (1982), Ind.App., 436 N.E.2d 871, 873, *trans. denied.* This authority exists independent of who instituted the original paternity proceeding. Therefore, the court did possess the authority to order E.W.R. to pay T.L.C.'s attorney fees as she defended her judgment on appeal.

■ However, the court's authority to order an appellant to pay the appellate attorney's fees of the opposing party does not extend to allow violations of due process. In the case at bar the trial court entered its order awarding appellate attorney's fees to T.L.C. *ex parte.* E.W.R. did not receive notice of the hearing and was not present at any hearing on the appellee's motion. The elements of procedural due process are not definable with precision, but the opportunity to be heard is fundamental. *Bagal v. Bagal* (1983), Ind. App., 452 N.E.2d 1070, 1072.

Therefore, the trial court erred in granting the appellee's motion for appellate attorney's fees *ex parte*. This cause is therefore affirmed in part, reversed in part, and remanded for a hearing on the motion for appellate attorney fees to evaluate need, ability to pay, reasonableness of fee and all other considerations necessary to the proper determination of this issue.

Affirmed in part, reversed in part, and remanded.

SHIELDS, P.J., and NEAL, J., concur.