Thomas J. SULLIVAN, Appellant–
Plaintiff,

v.

AMERICAN CASUALTY COMPANY OF
READING, PENNSYLVANIA,
Appellee–Defendant.

No. 30A04–9012–CV–592.

Court of Appeals of Indiana,
First District.

Dec. 17, 1991.

Charles T. Jennings, Mark R. Smith, Jennings & Maas, Carmel, for Thomas J. Sullivan.

Richard S. Ewing, William N. Ivers, Stewart & Irwin, Indianapolis, for American Cas. Ins. Co. of Reading, Pa.

John D. Cochran, Jr., Young, Cochran & Reese, Indianapolis, for State Farm Mut. Ins. Co.

BAKER, Judge.

Plaintiff-appellant Thomas Sullivan appeals the trial court's grant of summary judgment in favor of defendant-appellees American Casualty Company of Reading, Pennsylvania (CNA) and State Farm Mutual Insurance Company (State Farm).

The issues we review are:

I. Whether this court has jurisdiction to decide this appeal.

II. Whether the trial court erred in granting summary judgment to CNA.

III. Whether the trial court erred in granting summary judgment to State Farm.

We hold we have jurisdiction to hear and decide the appeal. We find material facts to be in dispute between Sullivan and CNA and therefore reverse the summary judgment in favor of CNA and remand for further proceedings. We affirm the summary judgment in favor of State Farm.

## FACTS

This appeal stems from an automobile accident in Kokomo, Indiana. On January 12, 1984, a truck owned by Fairmont Homes, Inc. and driven by Lynn Walker struck the rear end of Jon Edwards's car, which at the time of the collision was stopped for a red light. The force of the collision caused Edwards's car to lurch forward and strike the rear end of the car in front of his, which was also stopped for the red light. Thomas Sullivan, a passenger in the car struck by Edwards's and an employee of Shepard & Poorman, was injured in the accident. Sullivan was working for Shepard & Poorman at the moment of the accident. For a complete description of the facts surrounding this accident, see *Sullivan v. Fairmont Homes, Inc.* (1989), Ind. App., 543 N.E.2d 1130, *trans. denied.*

Walker and Fairmont Homes, Inc. had liability insurance issued by Ideal Mutual Insurance Company with a policy limit of $500,000 per occurrence. Ideal Mutual Insurance Company became insolvent, however, in 1985. Edwards possessed liability insurance through his insurer, United Farm Bureau Mutual Insurance Company. His limit was $25,000 per person and $50,000 per occurrence. Sullivan himself had uninsured motorist insurance through State Farm Mutual Insurance Company in the amount of $15,000 per person and $30,000 per occurrence. His employer, Shepard & Poorman, had uninsured motorist insurance issued by CNA. Its limit was $500,000 per occurrence.

Sullivan chose to sue Walker, Fairmont Homes, and Edwards in one suit and CNA in another. During the pendency of the trial against Walker, Fairmont Homes, and Edwards, Sullivan settled with Edwards and Edwards's insurer by means of an agreed judgment and loan receipt agreement. This agreement provided for a $1.6 million agreed judgment in favor of Sullivan and included a covenant not to execute in consideration of Farm Bureau's payment of $12,500. The agreement provided that in the event Sullivan recovered more than a certain sum, Edwards and Farm Bureau would receive their "loan" of $12,500 back dollar-for-dollar. The agreed judgment was entered on the judgment docket as satisfied on May 18, 1989.

Meanwhile, Sullivan, dissatisfied with the attention CNA afforded him since June 23, 1987, the day he submitted his uninsured motorist claim to CNA, had filed suit against CNA on June 14, 1988. State Farm was permitted to intervene in this suit.

On August 20, 1988, a jury returned a verdict in favor of Walker and Fairmont Homes. Sullivan's negative judgment was affirmed by this court in *Sullivan v. Fairmont Homes, Inc., supra.* On August 19, 1990, the trial court certified as final its grant of summary judgment in favor of American Casualty. Five days later, the trial court granted summary judgment in State Farm's favor. Sullivan appeals.

### DISCUSSION AND DECISION [1]

#### I

At the outset, we note CNA has asked us to dismiss the appeal for Sulli-van's alleged failure to comply with the requirement of Ind.Appellate Rule 2(A) that a party file a praecipe within 30 days of the entry of final judgment to pursue an appeal. Failure to file in a timely manner is a jurisdictional failure requiring dismissal of the appeal. *Bailey v. Sullivan* (1982), Ind.App., 432 N.E.2d 75, 77. Sullivan's filing was timely, and we therefore decline the request.[2]

As mentioned above, while Sullivan's case against the other parties to the accident was pending trial, Sullivan and his wife instituted this action against CNA, his employer's auto insurance carrier, on June 14, 1988.[3] State Farm Mutual Insurance Company, Sullivan's individual auto insurance carrier, moved to intervene as a party defendant on August 10, 1988.[4] The trial court granted the motion two days later, on August 12, 1988.

CNA moved for summary judgment on September 9, 1989, and the trial court granted the motion on August 1, 1990. On August 9, 1990, Sullivan moved for entry of final judgment under Ind.Trial Rule 54(B) and Ind.Trial Rule 56(C). On August 19, 1990, without objection or comment by CNA, the trial court, finding no just reason for delay, granted Sullivan's motion and certified the entry of final judgment for CNA. Sullivan filed his praecipe on September 17, 1990, 29 days after the trial court's August 19 entry of final judgment and 47 days after the grant of summary judgment to American Casualty.

When the trial court granted State Farm's motion to intervene, State Farm

---

1. This is the third time litigation arising from Sullivan's January 12, 1984 auto accident has been before this court. In *Haskin v. Sullivan* (1990), Ind.App., 550 N.E.2d 799, a legal malpractice case in which Sullivan sued his attorneys for failing to file a worker's compensation claim on his behalf, we affirmed the trial court's denial of summary judgment to the defendant attorneys. In *Sullivan v. Fairmont Homes, Inc., supra,* we affirmed the verdict and judgment against Sullivan in his action against the other parties to the accident.

2. CNA initially moved to dismiss the appeal after Sullivan filed his appellant's brief. After Sullivan responded and CNA replied to the response, Chief Judge Ratliff denied the motion on May 29, 1991.

3. Sullivan's wife's claims were later dismissed by stipulation.

4. The motion alleged, among other things, "[t]hat State Farm has defenses to Plaintiffs' claim for uninsured motorist coverage presenting both *questions of law and fact which are* common and an intragal [sic] part to the issues raised in the present action between Plaintiffs and [CNA]...." *Record* at 90–91.

became a party, *Panos v. Perchez* (1989), Ind.App., 546 N.E.2d 1253, and the suit thereby became a multi-party action. *Huckeby v. Frozen Food Express* (5th Cir. 1977), 555 F.2d 542, 545.[5] In a multi-party action, a judgment, including a summary judgment, adjudicating "fewer than all the claims or the rights and liabilities of fewer than all the parties" is a final judgment "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." T.R. 54(B), 56(C).

Here, the August 1 summary judgment, which did not address any of the issues between Sullivan and State Farm, contained no determination that there was no just reason for delay in entry of final judgment in favor of CNA. It was not until August 19 that the trial court, upon Sullivan's motion and without objection from CNA, entered final judgment in favor of CNA. Therefore, under App.R. 2(A), Sullivan had 30 days from August 19 to file his praecipe, and his September 17 filing was timely.[6]

We are not persuaded by CNA's argument that the August 1 summary judgment was final merely because Sullivan did not amend his complaint to include allegations against State Farm until August 24. A proper motion to intervene is effective upon the trial court's grant of the motion; *see* Ind.Trial Rule 24, and no further action is necessary to make the intervenor a party for purposes of T.R. 54(B). *See Abdallah v. Hartford Fire Ins. Co.* (3rd Cir.1976), 536 F.2d 20 (trial court recognized party status of intervenor as of date intervention was granted and granted 30 days for fil-

ings of pleadings between plaintiff and intervenor). Having determined that Sullivan met the time limitations and that we have jurisdiction to hear and decide the appeal, we turn now to the merits of the appeal.

## II

■ When reviewing a grant of summary judgment, we apply the same standards as the trial court, and examine all pleadings, admissions, answers to interrogatories, depositions, and affidavits filed with the court in the light most favorable to the party opposing the summary judgment motion. *Moore v. Sitzmark Corp.* (1990), Ind.App., 555 N.E.2d 1305, 1306–07. Summary judgment is appropriate only when no genuine issues of material fact exist and when the moving party is entitled to judgment as a matter of law. *Id* at 1307. When a defendant is the moving party, it is entitled to summary judgment as a matter of law if it can demonstrate that either the undisputed material facts negate at least one element of the plaintiff's claim, or if it raises a valid affirmative defense which bars the plaintiff's claim. If a defendant cannot make one of these showings, summary judgment is inappropriate. *Id.*

### A

Although Sullivan's original action against Walker and Fairmont Homes sounded in negligence, his uninsured motorist claim against CNA and State Farm is grounded in contract.

---

5. T.R. 54(B) tracks the federal rule and codifies federal case law on the finality of judgments, and it is therefore appropriate for us to turn to federal decisions in our analysis. *Elder v. State, ex rel. Dep't of Natural Resources* (1985), Ind. App., 482 N.E.2d 1383, 1388, *trans. denied.*

6. This case is not to be confused with the situation confronted in *First Equity Security Life Ins. Co. v. Keith* (1975), 164 Ind.App. 412, 329 N.E.2d 45 and again in *Krueger v. Bailey* (1980), Ind. App., 406 N.E.2d 665. In those cases, as here, the trial court had not certified its judgment as final. Unlike the present case, however, the appellants in the earlier cases filed their appeals

too soon: instead of seeking certification, they appealed. To facilitate the speedy disposition of each case, our court exercised its discretion under Ind.Appellate Rule 4(E) and heard the appeals. *See also Kelly v. Lee's Old Fashioned Hamburgers, Inc.* (5th Cir.1990), 908 F.2d 1218 (If the language of the judgment and related portions of the record reveal an unmistakable intent to consider the judgment final, the judgment will be appealable even absent the phrase "no just reason for delay").

Here, on the other hand, Sullivan properly requested certification before pursuing his appeal.

Sullivan's employer's uninsured motorist insurance policy with CNA reads as follows:

B. WE WILL PAY

1. We will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle.

\* \* \* \* \* \*

2. If this insurance provides a limit in excess of the amounts required by the financial responsibility law of Indiana, we will pay only after all liability bonds or policies have been exhausted by judgments or payments.

*Record* at 32–33. Sullivan's policy with State Farm employs the same "legally entitled to recover" language. It is not disputed that Sullivan is an "insured" for purposes of the uninsured motorist coverage, that Fairmont and Walker, by virtue of the insolvency of Ideal Mutual Insurance Company, are uninsured motorists, and that Edwards is an underinsured motorist.[7] Thus, under Sullivan's and his employer's uninsured motorist policies, Sullivan may collect only upon showing he is "legally entitled to recover." Neither insurance policy, however, defines the phrase. Sullivan, CNA, and State Farm all agree the term "legally entitled to recover" requires, at a minimum, a showing of fault on the part of the uninsured motorist. *See Town & Country Mutual Insurance Co. v. Hunter* (1985), Ind.App., 472 N.E.2d 1265, *trans. denied; Allied Fidelity Ins. Co. v. Lamb* (1977), Ind.App., 361 N.E.2d 174.

CNA and State Farm argue the agreed judgment and loan receipt agreement conclusively establish the rights and obligations of Sullivan and Edwards and conclude all business between them. Therefore, they submit, Sullivan can no longer be "legally entitled to recover" from Edwards. Sullivan insists the agreement establishes his legal entitlement to recover from Edwards, and that therefore CNA and State Farm are obliged to compensate him for his injuries.[8]

7. The terms of CNA's insurance agreement define "uninsured. motor vehicle" to include "underinsured motor vehicle." *Record* at 32. This is not true with regard to the State Farm policy. Accordingly, Sullivan does not contend Edwards was operating an "uninsured motor vehicle" with respect to the State Farm policy.

8. Loan receipt agreements have been a source of much debate in this state and others for some time.

A loan receipt agreement, in its simplest form, provides that one with potential liability to a claimant will advance funds in the form of a non-interest loan to the claimant in order that the claim may be prosecuted against another who is also potentially liable for the claim. In return for the funds advanced, the claimant agrees that he will not sue or will not seek to enforce a judgment against the lender and will repay the loan according to some formula based upon the claimant's recovery against the other party. Such an agreement, then, serves to limit the liability of one against whom a claim might be pressed and, at the same time, gives the claimant an immediate 'bird in hand' instead of forcing him to await but possible recovery following the protracted litigation.

*Burkett v. Crulo Trucking Co.* (1976), 171 Ind. App. 166, 174, 355 N.E.2d 253, 258. When the *Burkett* opinion was written in 1976, neither the form nor the effect of loan receipt agreements was well-established at law. The *Burkett* court noted that the "ingenuity" employed to create the loan receipt agreement was "being applied to devise innumerable variations." *Id.* Consequently, it was observed that "the courts are frequently called upon to determine the legal effects of those variant forms and to provide legal parameters for their use." *Id.*

15 years later, we are still called upon to assess the legal effect of loan receipt agreements and their kin. Although "covenants not to sue, covenants not to execute, and loan receipt agreements are legal and are to be encouraged in the settlement of litigation, [nevertheless].... controversy [still] arises regarding the use of such settlement agreements...." *Manns v. State Dep't. of Highways* (1989), Ind., 541 N.E.2d 929, 932 (citations omitted). One of the primary fears is the prejudicial impact the settlement agreement may have upon a jury when the document is "'poisoned' with irrelevant, evocative language calculated to inflame prejudice." *Id.* at 933. Another fear is the collusive effect loan receipt agreements have between the parties. Once the potentially liable party has entered into a loan receipt agreement and has advanced funds to a plaintiff, that party will have little, if any, incentive to participate vigorously in truth-finding function of the trial process. In fact, in most situations, it may be to a settling defendant's advantage to assist the plaintiff, because to the extent the plaintiff recovers from a non-settling defendant the settling defendant will be entitled to reimbursement for the money "loaned." *See Burkett, supra,* at 259 ("Considering the loan receipt agreement's po-

■ We agree with CNA and State Farm that once an insured enters an agreed judgment and loan receipt agreement with a settling defendant, the insured is no longer legally entitled to recover from the settling defendant. *Elmwood Plantation, Inc. v. Ruud Water Heater Div.* (E.D.La.1985), 623 F.Supp. 387 (filing of satisfaction of judgment estopped party from asserting any claim of any nature); *Kennedy v. Eder* (1923), 79 Ind.App. 644, 139 N.E. 372 (the payment and satisfaction of a judgment operates to extinguish it and to put an end to its validity for all purposes); *Gosselin v. Automobile Club Ins. Co.* (1990), R.I., 574 A.2d 1243 (Gosselins' settlement with underinsured tortfeasor precluded collection on subsequent underinsured motorist claim with insurer because following original settlement with tortfeasor, Gosselins were no longer "legally entitled to recover" from tortfeasor). Sullivan is not legally entitled to recover from Edwards.

■ With respect to CNA, however, the argument is irrelevant because CNA waived its right to assert that Sullivan is no longer legally entitled to recover by virtue of the agreed judgment and loan receipt agreement. In a letter to Sullivan's attorney dated February 2, 1988, CNA, through its agent Steve Ehmke, senior claims representative, voluntarily foreclosed this avenue. That letter, in its entirety, reads as follows:

Dear Mr. Smith:

In response to our conversation of 1–28–88 and your subsequent letter of the same date, we have no objection to Mr. Sullivan reaching a settlement with Farm Bureau relating to Mr. Edward's [sic] reported involvement in this loss. This settlement, and subsequent release, will not be construed by CNA as a violation of any provision of the uninsured motorist coverage. This settlement, and subsequent release, will also not be used by

CNA as a basis upon which to deny or set up a defense to the [sic] Sullivan's uninsured motorist claim.

Sincerely,

/s/ Steve K. Ehmke

Sr. Claims Representative

*Record* at 245. Based on the representations CNA made to Sullivan in the last two sentences of the above letter, we agree with Sullivan that CNA waived its right to claim Sullivan is not legally entitled to recover based upon the agreed judgment and loan receipt agreement. For the same reason, CNA may not deny Sullivan uninsured motorist coverage on the basis of Sullivan's failure to exhaust all other bonds or policies, as required by the insurance policy.[9] It was therefore error for the trial court to grant summary judgment in favor of CNA on the issue of insurance coverage. State Farm, which made no such representations, is not precluded from using this defense.

**B**

The "legally entitled to recover" issue is not fully resolved by our holding that the agreed judgment and loan receipt agreement prevent Sullivan from being legally entitled to recover from Edwards. For if Sullivan could show he was legally entitled to recover from either Walker or Fairmont Homes, and if he satisfied his other policy requirements, then Sullivan could collect under his uninsured and underinsured motorist insurance coverage. We therefore address whether Sullivan is legally entitled to recover from Walker or Fairmont Homes.

Sullivan seeks to show the fault needed to be legally entitled to recover by relitigating the issue of whether either or both of the other drivers were at fault in causing the accident that injured him. CNA and State Farm claim Sullivan is collaterally estopped from relitigating the issue of lia-

---

tential for abuse, we have, by this holding, applied a Band–Aid to an abscess.") Further, under the typical agreement, the settling defendant will be contractually immune from any further potential liability. Without question, the opportunity for collusion is present.

The legal validity of Sullivan's and Edwards's loan receipt agreement is not before us, how-

ever; rather, the issue is the effect of the agreement upon Sullivan's legal entitlement to recover.

9. Sullivan collected from Edwards only one-half of the $25,000 available under Edwards's policy.

bility, because the issue of liability was already litigated adversely to Sullivan. We agree.

■■■ The doctrine of issue preclusion is designed to prevent unnecessary relitigation of issues. It applies

[w]here the causes of action are not the same, but where some fact or question has been determined and adjudicated in the former suit, and the same fact or question is again put in issue in a subsequent suit between the same parties. In such cases the former adjudication of the fact or question, if properly presented and relied upon, will be held conclusive on the parties in the later suit, regardless of the identity of the causes of action, or the lack of it, in the two suits. When the second action between the same parties is on a different cause of action, it is well settled that the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined, and not as to other matters which might have been litigated and determined. In such cases the inquiry must always be as to the point or question actually litigated and determined in the original action.

*Town of Flora v. Indiana Service Corp.* (1944), 222 Ind. 253, 257, 53 N.E.2d 161, 163.

■■■ The identity of parties requirement espoused in *Town of Flora* has traditionally included the parties' privies. "A privy is one who, after the commencement of the action, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." *Tobin v. McClellan* (1947), 225 Ind. 335, 344, 73 N.E.2d 679, 683. Additionally,

[m]odern cases look beyond the nominal parties and treat as parties those persons whose interests are involved. As stated in Bigelow on Estoppel 145 (6th ed. 1913): 'Identity of parties is not a mere matter of form, but of substance. Parties nominally the same may be in legal effect, different; and parties nominally different may be, in legal effect, the same.' Thus, the identity of parties re-

quirement has not been limited strictly to the denominated parties but has been expanded to include real parties as well as privies.

*Hockett v. Breunig* (1988), Ind.App., 526 N.E.2d 995, 1000 (footnote omitted).

■■■ Mutuality of estoppel is another element of issue preclusion in Indiana. *State v. Speidel* (1979), 181 Ind.App. 448, 453, 392 N.E.2d 1172, 1175. "Estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it had it gone against him." *Tobin v. McClellan, supra,* 225 Ind. at 345, 73 N.E.2d at 683. But as Judge Shields noted in her *Hockett* concurrence, "the requirement of mutuality as a condition imposed by our supreme court to the application of issue preclusion is questionable. The supreme court cases upon which this court has relied as imposing the mutuality requirement concern the application of claim preclusion, not issue preclusion." *Hockett* at 1000.

The mutuality requirement has been abandoned in many state courts and in the federal courts. *See Blonder–Tongue Laboratoties, Inc. v. University of Illinois Foundation* (1971), 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, a case approving the defensive use of collateral estoppel.

Indiana, too, has recognized a defensive exception to the requirements of mutuality and privity, 'namely, that they are not necessary where the liability of the defendant ... is dependent on or derived from the liability of one who was exonerated in an earlier suit by the same plaintiff on the same facts.' *Mayhew & Huston v. Deister* (1969), 144 Ind.App. 111, 122, 244 N.E.2d 448, 454; *Speidel,* 392 N.E.2d at 1177, n. 6. The *Mayhew* court cited typical examples of such derivative liability as 'master and servant, principal and agent, and indemnitor and indemnitee.' *Mayhew,* 244 N.E.2d at 454; *Glass v. Continental Assur. Co.* (1981), Ind. App., 415 N.E.2d 126, 128. *Thus this exception allows defensive use of issue preclusion when a defendant's liability is dependent on or derived from the liability of one who was exonerated in*

*an earlier suit and, accordingly, is limited to defendants sharing some sort of mutually dependent relationship.*

*Hockett* at 1001 (emphasis added).

 We view Sullivan and his employer, on the one hand, and CNA and State Farm on the other, as sharing exactly the type of mutually dependent relationship contemplated by Judge Shields. Here, although CNA and State Farm were not parties to the first suit, both may invoke defensive collateral estoppel because their liability is contractually derivative, *Hockett, supra,* and the issue of Walker's and Fairmont Homes's liability was determined in the original suit, *Town of Flora, supra.*[10] We hold that in this situation, i.e. when a plaintiff who has lost at trial on the merits seeks to relitigate issues already decided, the defensive use of issue preclusion is permissible.[11]

### C

One issue remains for our resolution: Sullivan's punitive damages claim against CNA. The claim is based upon CNA's unreasonable delay in accepting or denying liability for the claim and upon concealing from Sullivan various policy defenses for a period of over two years. Specifically, Sullivan argues CNA failed to accept or deny uninsured motorist coverage for a period of one year, and that CNA did not inform Sullivan that CNA intended to use the defenses of failure to exhaust bonds and policies, failure to notify of loss, failure to forward copies of all notices and legal papers, and failure to pursue workman's compensation benefits until CNA filed its answer to his complaint some two years after the accident. Sullivan claims questions of material fact exist with regard to these claims, and that therefore summary judgment was erroneous.

 Although an insurer has a legal duty to deal in good faith with an insured, *Liberty Mutual Ins. Co. v. Parkinson*

(1985), Ind.App., 487 N.E.2d 162, 164, before punitive damages may be awarded there must be a showing by clear and convincing evidence that conduct on the part of the defendant reflected malice, fraud, gross neglect, oppression, or bad faith. *Town & Country Mut. Ins. Co., supra,* at 1268. Punitive damages are allowable against insurers in cases when the duty to act in good faith has been breached and the breach is accompanied by an independent tort or where a serious wrong of a tortious nature was committed and the public interest would be served by the deterrent effect of punitive damages. *Id* at 165. Insurance companies, of course, are permitted to dispute liability in good faith because of the prohibitive social costs of a rule which would make claims nondisputable. *Vernon Fire & Casualty Ins. Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173.

 The duty of good faith may be breached by unreasonable delay in denying or accepting coverage. *Hamed v. General Accident Ins. Co.,* (7th Cir.1988) 842 F.2d 170. In *Hamed,* the insurer did not accept or deny coverage until 51 weeks after its insured filed a proof of claim; the court called this "unreasonable." Additionally, the insurer did not inform its insured that it would use a particular defense, in this case arson, to deny coverage until forced to do so in a lawsuit brought by the insured. Under these circumstances, an award of punitive damages was affirmed.

 Here, Sullivan has submitted evidence tending to show that CNA delayed its decision to accept or deny coverage for a period of one year, and that CNA failed to inform Sullivan of the defenses it planned to raise under the policy, despite the fact that Sullivan repeatedly asked CNA to identify any coverage issues CNA may have had with Sullivan. Sullivan has raised questions of material fact regarding CNA's good faith in dealing with Sullivan; summary judgment is therefore inappropriate on the punitive damages claim.

---

**10.** "The jury's verdict amounts to a determination of nonliability." *Sullivan v. Fairmont Homes, supra,* at 1134.

**11.** We caution that we limit our holding today to the *defensive* use of collateral estoppel.

The summary judgment in favor of CNA is reversed and the cause is remanded to the trial court for proceedings consistent with this opinion; the summary judgment in favor of State Farm is affirmed.

Affirmed in part; reversed in part and remanded.

ROBERTSON and RUCKER, JJ., concur.