**Harvey WHITE and Carolyn White,
Appellants–Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY,
Appellee–Defendant.**

No. 43A03–9111–CV–357.

Court of Appeals of Indiana,
Third District.

May 11, 1992.

---

Robert W. Miller, Miller & Miller, Elkhart, for appellants-plaintiffs.

Robert J. Konopa, Robert G. Devetski, Butler, Simeri, Konopa, & Laderer, South Bend, for appellee-defendant.

HOFFMAN, Judge.

Appellants-plaintiffs Harvey and Carolyn White appeal the trial court's grant of summary judgment to Allstate Insurance Company, appellee-defendant.

The facts relevant to this appeal disclose that on December 4, 1988, the appellant, Harvey White (White), was involved in an automobile accident from which he suffered personal injuries. At the time of the accident, White was driving an automobile owned by his employer, who had automobile insurance coverage through Cigna Property and Casualty Companies (Cigna). At the same time, White had personal automobile insurance with the appellee, Allstate Insurance Company (Allstate).

White claimed that a hit-and-run driver had collided with the vehicle he was driving. Each automobile insurance policy, Cigna's and Allstate's, provided uninsured coverage for hit-and-run accidents. Under each policy, the uninsured (hit-and-run) coverage required actual physical contact between the hit-and-run vehicle and the insured vehicle:

Cigna's Policy:
"A. COVERAGE
1. We will pay all sums the 'insured' is legally entitled to recover as damages from the owner or driver of an 'uninsured motor vehicle.'

\*   \*   \*   \*   \*   \*

F. ADDITIONAL DEFINITIONS
\*   \*   \*   \*   \*   \*

4. 'Uninsured motor vehicle' means a land motor vehicle or trailer: ...
   d. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. A hit-and-run vehicle is one that causes 'bodily injury' to an 'insured' by *hitting* the 'insured,' a covered 'auto' or a vehicle an 'insured' is 'occupying.'" (Emphasis added.)

Allstate's Policy:
"We will pay damages for bodily injury or property damage which an insured person is legally entitled to recover from the owner or operator of an uninsured auto.

\*   \*   \*   \*   \*   \*

An uninsured auto is:
\*   \*   \*   \*   \*   \*

4. a hit-and-run motor vehicle which causes bodily injury to an insured person by *physical contact* with the insured person or with a vehicle occupied by that person." (Emphasis added.)

Allstate's coverage was secondary to Cigna's coverage.

On May 11, 1990, White and his wife filed a complaint against Cigna in state court. Based on diversity of citizenship and the amount in controversy exceeding $50,000.00, Cigna requested that the matter be transferred to the United States

District Court, Northern District of Indiana (District Court). The petition was granted.

Allstate was notified by the Whites on May 23, 1990, that their damages exceeded Cigna's $60,000.00 coverage maximum. Therefore, they advised that they were making a claim under Allstate's uninsurance coverage for an additional $40,000.00. In a subsequent letter to Allstate, the Whites advised that they would be pursuing Allstate's full uninsured coverage amount of $100,000.00 due to the fact that White's injuries "are far in excess of $160,000.00." However, the Whites could only recover a total amount not exceeding $100,000.00.

The Whites did not add Allstate to the suit against Cigna. A separate suit was filed against Allstate in state court on September 12, 1990.

Following a bench trial of the Whites' lawsuit against Cigna, the District Court rendered a judgment in March 1991, in favor of Cigna finding that "there was no hit and run driver." The Court's order contained findings of fact and conclusions of law and thoroughly discussed all evidence presented to the Court by both parties.

In July 1991, Allstate moved for summary judgment. Allstate contended that the Whites were prohibited from relitigating the issue of whether a hit-and-run driver had actually hit White's car. The trial court granted summary judgment to Allstate.

One issue is dispositive of this appeal: whether the Whites are barred by the doctrine of issue preclusion from relitigating the issue of whether a hit-and-run driver collided with the vehicle White was driving.

Allstate argues that a trial has already been had on whether White was hit by a hit-and-run driver; the trial court determined there was no hit-and-run driver; Allstate's policy contains the same prerequisite of actual physical contact with the hit-and-run driver before recovering under the uninsurance clause; and, therefore, the Whites should be precluded from relitigating the liability issue since it was decided adversely to them in District Court. The Whites, on the other hand, claim that Allstate has not met the requirements for asserting issue preclusion, namely, there is neither identity of parties nor mutuality of estoppel.

Issue preclusion is a branch of *res judicata* that is also referred to as collateral estoppel or estoppel by verdict or finding. *Town of Flora v. Indiana Service Corp.* (1944), 222 Ind. 253, 257, 53 N.E.2d 161, 163. In *Town of Flora*, the Court explained when the doctrine applies:

> "where the causes of action are not the same, but where some fact or question has been determined and adjudicated in the former suit, and the same fact or question is again put in issue in a subsequent suit between the same parties. In such cases the former adjudication of the fact or question, if properly presented and relied on, will be held conclusive on the parties in the latter suit, regardless of the identity of the causes of action, or the lack of it, in the two suits. When the second action between the same parties is on a different cause of action, claim, or demand, it is well settled that the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined, and not as to other matters which might have been litigated and determined. In such cases the inquiry must always be as to the point or question actually litigated and determined in the original action."

*Id.*

One requirement for issue preclusion in Indiana has been that the parties to the subsequent suit must be identical to the parties in the first suit. Privies of parties, *Town of Flora, Id.* at 256, 53 N.E.2d 161, and real parties in interest, *In re Estate of Nye v. First Natl. Bank et al.* (1973), 157 Ind.App. 236, 299 N.E.2d 854, have also been accepted as qualifying under this requirement.

The second requirement is mutuality of estoppel. "Estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it had it gone against him."

*Tobin v. McClellan* (1947), 225 Ind. 335, 345, 73 N.E.2d 679, 683;

*State v. Speidel* (1979), 181 Ind.App. 448, 453, 392 N.E.2d 1172, 1175.

Indiana has expanded the requirements of mutuality and privity when issue preclusion is applied defensively. This exception provides "namely, that they are not necessary where the liability of the defendant ... is dependent on or derived from the liability of one who was exonerated in an earlier suit by the same plaintiff on the same facts."

*Mayhew, Huston v. Deister et al.* (1969), 144 Ind.App. 111, 122, 244 N.E.2d 448, 454;

*Sullivan v. American Cas. Co. of Reading, Pa.* (1991), Ind.App., 582 N.E.2d 890, 897.

This derivative relationship is typically found between master and servant, principal and agent, and indemnitor and indemnitee. Thus, the exception applies to defendants sharing some sort of mutually dependent relationship. *Hockett v. Breunig* (1988), Ind.App., 526 N.E.2d 995, 1001.

These requirements of privity and mutuality have been abolished in federal courts, as well as in most state courts. 1B Moore's Federal Practice § 0.441[2]. The California Supreme Court repudiated the mutuality requirement in *Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 122 P.2d 892, finding no compelling reason for the party asserting the plea of *res judicata* to have been a party, or in privity with a party, to the earlier litigation. The beneficiaries in *Bernhard* had sued the executor of Clara Sather's estate, Charles Cook, for taking money from the estate and depositing it in his personal account. The court found that Clara Sather had authorized the transfer of her money as a gift to Charles Cook during her lifetime. Thereafter, the beneficiaries sued the successor bank, Bank of America, which had transferred the money out of Clara Sather's account to Charles Cook. In finding that the Bank could assert issue preclusion, the court noted that other jurisdictions had abandoned the requirement of mutuality of estoppel and had confined the requirement of privity

to the party against whom the plea of *res judicata* is asserted. Three reasons for the court's decision were discussed: the two actions contained identical issues, the earlier action had resulted in a final judgment on the merits, and the party against whom the plea was asserted was a party, or the privy of a party, in the prior action.

These latter criteria were utilized in *B.R. DeWitt, Inc. v. Hall* (1967) 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195, in allowing the offensive use of collateral estoppel. Hall, the defendant, had collided with a cement mix truck operated by Farnum and owned by plaintiff, B.R. DeWitt. Farnum sued Hall and was awarded a judgment of $5,000.00. Subsequently, plaintiff sued Hall requesting compensation for the property damage to the truck. Plaintiff asserted res judicata on the issue of Hall's liability and the court agreed. The court, in following *Bernhard,* adopted the reasoning in an earlier case that "[w]here a full opportunity has been afforded to a party to the prior action and he has failed to prove his freedom from liability or to establish liability or culpability on the part of another, there is no reason for permitting him to retry these issues." *Id.* at 146, 278 N.Y.S.2d at 600, 225 N.E.2d at 197. Numerous other state and federal cases were cited in support of its decision that the " 'doctrine of mutuality' is a dead letter." *Id.* at 147, 278 N.Y.S.2d at 601, 225 N.E.2d at 198.

The United States Supreme Court followed this trend abandoning the technical requirement of mutuality in *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation* (1971), 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788. In disallowing a patentee to relitigate the issue of patent validity against another alleged infringer, the Court accepted the reasoning of prior state and federal court decisions discarding the mutuality requirement. "Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or 'a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy

or wise basis for fashioning rules of procedure.' [Citation omitted.]" *Id.* at 329, 91 S.Ct. at 1443. The Court carefully noted that due process would prohibit a party who has never had a chance to present evidence and arguments on the issue from being estopped. *Id.* To assure that a party against whom estoppel is asserted had a full and fair opportunity to litigate the issue, the Court considered certain factors such as: whether the party had a choice of forum; whether the party had the incentive to litigate the issue; whether the court wholly failed to grasp the technical subject matter and issues in suit; and whether the party was deprived of crucial evidence or witnesses in the first litigation. *Id.* at 333–334, 91 S.Ct. at 1445. In conclusion, the Court recognized that there was no "automatic formula for proper rulings on estoppel pleas" and that a court's decision would rest on a "sense of justice and equity." *Id.*

The United States Supreme Court confirmed the generality of defensive use of issue preclusion applied in *Blonder–Tongue, id.*, and extended its application to offensive use in *Parklane Hosiery Co. v. Shore* (1979) 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552. *See discussion* 1B Moore's Federal Practice § 0.441[3.–2].

Similarly, the logic of abandoning the mutuality requirement and permitting issue preclusion in subsequent litigation with others has been adopted in the Restatement (Second) Judgments (1980) § 29. Of course, limitations are denoted to assure that the party against whom estoppel is pleaded has had a full and fair opportunity to litigate the issue.

Judge Shields in her concurring opinion in *Hockett, supra,* recognized the further erosion of the mutuality requirement in this state. In *Turner v. Estate of Turner* (1983), Ind.App., 454 N.E.2d 1247, Turner was tried for murdering his parents. The jury returned a verdict of not guilty by reason of insanity. Subsequently, the administratrices of the parents' estates attempted to have a constructive trust established for Turner's intestate share. The trial court agreed with the administratrices that Turner should not benefit from his parents' death and ordered a constructive trust for Turner's share. The Court of Appeals reversed the imposition of a constructive trust based on the verdict at criminal trial which had found that Turner was unable at the time of the act to appreciate the wrongfulness of his conduct. While not basing the decision on issue preclusion, the Court stated:

> "Generally, the results reached in criminal proceedings are not considered res judicata in civil cases, in part, because of the difference in the burden of proof. [Citations omitted.] However, at the time of Allen's [Turner's] criminal trial he had the burden of establishing his insanity by a preponderance of the evidence, Indiana Code section 35–41–4–1; the same being true in the instant case. While neither party raises the issue, we note that the doctrine of collateral estoppel may well have been applicable under the present circumstances inasmuch as the issue and burden of proof were identical in both the criminal and civil proceedings."

*Id.* at 1248–1249, n. 2.

In *Hockett, supra,* the defendant, Hockett, filed a post-conviction relief petition alleging that his plea of guilty was not entered into knowingly, intelligently, and voluntarily and that he was denied effective assistance of counsel. The trial court denied the petition, which denial was affirmed on appeal. While his appeal had been pending, Hockett had filed a legal malpractice action against his trial counsel. Hockett had conceded that if the appeal was denied that his legal malpractice claim would be barred. The Court of Appeals affirmed the rejection of Hockett's legal malpractice action holding "[i]n light of this concession, the judgment affirming the denial of his post-conviction relief claim bars his action for attorney malpractice." *Id.* at 998. The Court also found the judgment to be correct since the attorneys' actions were not the proximate cause of Hockett's alleged damages. *Id.* However, Judge Shields, in her concurrence, found that issue preclusion was also a basis on which Hockett's legal malpractice claim could be denied.

Judge Shields observed that the elements and the burdens of proof were the same for ineffective assistance of counsel and legal malpractice. She noted that the factors listed in *Blonder–Tongue* had been satisfied: although defendant did not have a choice of forum, he did have just as great an incentive to litigate the claim at the post-conviction hearing, as discussed above, the standards were the same in both causes, and defendant had not been deprived of crucial evidence or witnesses. In conclusion, the defendant had a full and fair opportunity to litigate his claim at the post-conviction hearing. Other cases were cited in which the doctrine of issue preclusion was invoked to bar litigation of a legal malpractice claim after same issues in underlying criminal cases had been litigated.

*Vavolizza v. Krieger* (1974), 33 N.Y.2d 351, 352 N.Y.S.2d 919, 308 N.E.2d 439;

*Carmel v. Lunney* (1986), 119 A.D.2d 50, 505 N.Y.S.2d 735;

*Garcia v. Ray* (1977), Tex.Civ.App., 556 S.W.2d 870;

*McCord v. Bailey* (1980), 204 U.S.App. D.C. 334, 636 F.2d 606.

*See also: Knoblauch v. Kenyon* (1987), 163 Mich.App. 712, 415 N.W.2d 286.

Issue preclusion has also been utilized in insurance cases to prevent plaintiffs from having the opportunity to relitigate an issue against a new party. In *Herriford v. Boyles* (1990), 193 Ill.App.3d 947, 550 N.E.2d 654, the court did not permit the plaintiffs to relitigate the issue of damages that they had sustained in an automobile accident against defendants since damages had already been determined in a separate proceeding that plaintiffs had initiated under their uninsured automobile policy. Although the defendants were not a party to this first proceeding, the court granted defendants' motion to dismiss based on collateral estoppel, or as otherwise termed, issue preclusion.

The *Herriford* court looked to a prior decision, *Coronet Ins. Co. v. Booker* (1987), 158 Ill.App.3d 466, 110 Ill.Dec. 616, 511 N.E.2d 793, in which Booker was collaterally estopped from relitigating the issue of damages. Booker had previously received a default judgment of $6,000.00 against the uninsured motorist for injuries he had sustained in the collision. He then made a claim under his uninsured motorist coverage and was awarded $9,000.00 at arbitration. (Arbitration has the same conclusive effect as a trial court judgment.) The trial court ordered the arbitration award to be reduced by $3,000.00 since this was the amount of damages that had already been litigated and determined.

Similarly, in *Bailey v. Metro. Property & Liability Ins.* (1987), 24 Mass.App. 34, 505 N.E.2d 908, the plaintiff, a passenger in the owner's automobile, was injured in an automobile accident. The plaintiff recovered $7,500.00 after arbitration under the owner's policy and then attempted to pursue two other policies held by the plaintiff and the plaintiff's mother. The court disallowed plaintiff's attempt to relitigate damages based on issue preclusion.

*See also Gionfriddo v. Gartenhaus Cafe* (1988), 15 Conn.App. 392, 546 A.2d 284 (Plaintiff, the estate of the deceased killed in an automobile accident with an intoxicated driver, is prohibited from suing the intoxicated driver and receiving damages and then pursuing the purveyor of alcohol in a separate action for damages.).

While all these cases can be distinguished factually from the case at hand, the premise on which they were decided is applicable. In each, the party was prevented from relitigating an issue that had been conclusively determined in a prior action, even though there was a new party involved. The new party was allowed to assert issue preclusion even with the absence of mutuality of estoppel. The party against whom issue preclusion was asserted had been given a full and fair opportunity to litigate the issue previously.

White litigated in federal court against Cigna the issue of whether he was struck by a hit-and-run driver. He lost. He now attempts to relitigate in state court against Allstate the issue of whether there was a hit-and-run driver who collided with him. While mutuality of estoppel is not present, we must agree with the trend of cases holding that it is clearly a waste of judicial

resources to allow a party to continue the identical issue in subsequent cases against different parties. This certainly appears to be an appropriate case to allow defensive issue preclusion and we emphasize that this holding is limited to the defensive use. Clearly, the *Bernhard* prerequisites for applying issue preclusion are met: the same issue is present in both of these cases; the earlier action against Cigna resulted in a final judgment on the merits; and White was a party to the prior action.

White argues that the safeguards to the party against whom estoppel is asserted that were discussed in *Blonder–Tongue* are not all fulfilled in this case. Namely, White complains that he did not have a choice of forum since Cigna had the case removed to federal court. This may be true but there is no harm shown. The federal court applied Indiana law to the facts in the case just as the state court would have.

White also asserts that he did not have the same incentive to litigate since he knew that he could recover under Allstate's policy if he recovered little or nothing under the Cigna policy. It is difficult to ascertain why the Whites' attorneys would not attempt to gain a favorable outcome for their clients in any litigation that could benefit their clients, especially considering the extent of their clients' injuries. Furthermore, a favorable outcome against Cigna on the issue of liability would make the litigation against Allstate an easier case.

There is absolutely no evidence, contrary to the Whites' assertion, that the federal court did not have a grasp of the factual issues or that the court's reasoning is extremely questionable. Furthermore, the Whites have once again not shown, nor is there any evidence that would indicate, that crucial evidence or witnesses were missing from the federal case.

In summary, estopping the Whites from relitigating the issue of liability is a just and equitable solution. The Whites have had a full and fair opportunity to litigate the liability issue. As stated in *Allen v. McCurry* (1980) 449 U.S. 90, 94, 101 S.Ct.

411, 414, 66 L.Ed.2d 308 issue preclusion is designed to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." This logic applies with equal force and effect here. While Indiana has formerly adhered to the mutuality of estoppel requirement, to conform to this requirement would lead to an unjust result. The Whites have had their day in court and may not continue litigating the same issue as long as a new defendant exists.

The Whites claim that they could not have foreseen the disintegration of mutuality of estoppel. As demonstrated in the concurrence in *Hockett, supra,* the erosion has been constant, although, concededly, not always as noticeable. However, as stated above, there is no evidence that the lawsuit against Cigna would have been conducted, or could have been conducted, any differently with prior knowledge.

Affirmed.

STATON and CONOVER, JJ., concur.