**Vincent L. TOFANY, Appellant–
Defendant Below,**

v.

**NBS IMAGING SYSTEMS, INC.,
Appellee–Plaintiff Below.**

**No. 02A03–9202–CV–33.**

Court of Appeals of Indiana,
Third District.

Aug. 6, 1992.

J. Frank Kimbrough, Wilks and Kimbrough, Fort Wayne, for appellant.

William T. Hopkins, Jr., Gallucci, Hopkins & Theisen PC, Fort Wayne, for appellee.

STATON, Judge.

Vincent L. Tofany appeals a judgment in favor of NBS Imaging Systems, Inc., raising three issues for our review:

 I. Whether the trial court erred in denying his motion for partial summary judgment as to the res judicata effect of a federal court action on the issue of whether a pension plan existed for purposes of Tofany's ERISA counterclaim.

 II. Whether the trial court's findings of fact and conclusions of law were adequate to address the issues.

 III. Whether the trial court's judgment was inconsistent with the evidence.

NBS raises an additional issue:

 IV. Whether NBS is entitled to damages pursuant to Appellate Rule 15(G).

We affirm in part, reverse in part and remand.

In early 1985, Vincent Tofany was the president of a division of Mohawk Data Systems, Inc., a corporation engaged in providing driver's license systems to state agencies. In March of 1985, the division was sold to National Business Systems ("NBS"), a Canadian company which manufactured, marketed, and sold imprinters and credit cards. Tofany accepted a job as president of NBS Imaging Systems, Inc. ("NBS Imaging"), a subsidiary of NBS located in Fort Wayne. He retained that position until he was terminated on February 25, 1988.

Tofany's troubles with NBS Imaging began when it came to light in 1987 that NBS Imaging had inflated its sales and reported fictitious profits of $4.6 million for the third quarter of that year when in fact the company had experienced a $5.2 million third-quarter loss in 1987. When this information became generally known in the financial community, stock prices plummeted and trading was halted on the Toronto Stock Exchange and NASDAQ. The Securities and Exchange Commission and the Ontario Securities Commission began investigating the company's financial status. The Board of Directors of NBS called for a reorganization of management and Hees International Corp. ("Hees"), a management services company, was brought in to clean house. NBS's president was removed and Hees employee Timothy Casgrain was placed in the position of president and CEO. Hees and Casgrain studied the situation, conducted a number of interviews with NBS Imaging staff, and determined that nearly all of the individuals in the top tier of management should be held accountable for the questionable financial dealings of the company. These individuals, including Tofany, were discharged.

After NBS Imaging upper management was discharged, the story was reported in the Fort Wayne News–Sentinel. In an article appearing in the News–Sentinel on March 1, 1988 under the headline "3 NBS Managers Fired for Alleged Irregularities," Casgrain was quoted as stating,

"There have been some accounting irregularities and because they oversaw accounting, they were held responsible."

Soon after his termination, Tofany began trading barbs with NBS Imaging in a polemic which would escalate into the present lawsuit. Tofany began this altercation by threatening to submit the terms of his alleged employment agreement to arbitration. On March 9, 1988, NBS Imaging countered by filing a complaint to stay the threatened arbitration proceedings in Allen Circuit Court on the grounds that Tofany had no employment agreement. Tofany answered and counterclaimed, alleging that he had an employment agreement and further alleging that he was entitled to executive retirement plan benefits, unreimbursed expenses, and stock funds. NBS Imaging answered and amended its complaint, adding a count alleging that it had guaranteed a note for Tofany in the amount of $80,000, on which Tofany defaulted in December of 1988. Tofany answered the amended complaint and amended his counterclaim, alleging that he suffered a defamation of character as a result of Casgrain's comment to the News–Sentinel which caused permanent damage to his reputation and career. Tofany then filed a motion for partial summary judgment, contending that NBS Imaging was barred from relitigating the existence of a pension plan based upon a decision in the Federal District Court for the Northern District of Indiana in an action against NBS filed by Kenneth James, one of Tofany's fellow management employees at NBS Imaging. *See James v. National Business Systems* (N.D.Ind. 1989), 721 F.Supp. 169, *rev'd and rem'd* (7th Cir.1991), 924 F.2d 718. This motion was denied by the trial court.

A bench trial was conducted and judgment was entered in favor of Tofany for $1,492.00 paid into stock funds. Recovery was not permitted on any of the other claims. Tofany appeals this judgment.

## I.

### *Collateral Estoppel*

Tofany first contends that the trial court erred in denying his motion for partial summary judgment on the issue of the existence of the pension plan. In his motion for summary judgment, Tofany argued that NBS Imaging was collaterally estopped from relitigating the existence of an ERISA pension plan by the decision in *James v. National Business Systems, supra*. On appeal, NBS Imaging argues that the trial court correctly denied Tofany's motion because the elements of collateral estoppel are not present.

Until recently, in order to succeed on a claim of collateral estoppel or "issue preclusion," the litigant was required to show that four elements were present. While these elements have been variously characterized, in substance collateral estoppel required:

1) a final judgment on the merits in a court of competent jurisdiction;

2) identity of the issues;

3) mutuality of estoppel; and

4) identity of the parties.

*See, e.g., Burtrum v. Wheeler* (1982), Ind. App., 440 N.E.2d 1147, 1150, *transfer denied; Town of Flora v. Indiana Service Corp.* (1944), 222 Ind. 253, 257, 53 N.E.2d 161, 163.

Earlier this year, we elected to follow the growing trend away from the strict adherence to the third and fourth prongs of the collateral estoppel test. In *White v. Allstate Ins. Co.* (1992), Ind.App., 591 N.E.2d 586, we stated, "[W]e must agree with the trend of cases holding that it is clearly a waste of judicial resources to allow a party to continue the identical issue in subsequent cases against different parties." *Id.* at 591–92. Accordingly, we adopted the rule stated in *Bernhard v. Bank of America* (1942), 19 Cal.2d 807, 122 P.2d 892, allowing the application of collateral estoppel where the party seeking estoppel can show:

1) a final judgment on the merits in a court of competent jurisdiction;

2) identity of the issues; and

3) the party to be estopped was a party or the privy of a party in the prior action.

*White, supra,* at 589, 592. We limited our holding in *White* to cases where collateral estoppel was sought to be used defensively. *Id.* at 592.

 The present case involves the offensive use of collateral estoppel. Offensive use of collateral estoppel occurs when a plaintiff (or a party similarly situated) seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with the plaintiff or another party. *Parklane Hosiery Co., Inc. v. Shore* (1979), 439 U.S. 322, 326, at n. 4, 99 S.Ct. 645, 649, at n. 4, 58 L.Ed.2d 552. Defensive collateral estoppel occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against the defendant or another party. *Id.* Since Tofany seeks to use collateral estoppel to establish an issue relating to his counterclaim against NBS Imaging, he is attempting to employ offensive collateral estoppel.

At least one case decided prior to *White* opined that the offensive use of collateral estoppel is not permitted in Indiana. *Alsup v. Spratt* (N.D.Ind.1983), 577 F.Supp. 557, 559, *aff'd sub nom. Morris v. Spratt* (7th Cir.1985), 768 F.2d 879.[1] This view was based upon Indiana's requirement of identity of parties and mutuality of estoppel. *Id.* However, offensive use of collateral estoppel was allowed in *Watson Rural Water v. Indiana Cities Water Corp.* (1989), Ind.App., 540 N.E.2d 131, 135 at n. 1, *transfer denied.* Thus, our task is to examine the availability of offensive collateral estoppel in the face of the elimination of the mutuality requirement and the alteration of the requirement that the parties of the two actions be identical.

The elimination or alteration of these two requirements appear to obviate any reservations harbored by the district court in *Alsup* regarding the offensive use of collateral estoppel. Moreover, the use of the doctrine in *Watson* may indicate that the *Alsup* court's reading of Indiana law was incorrect. At any rate, after *White* the backdrop against which we are to make our decision has changed significantly. Thus, in deciding whether and on what grounds to permit the offensive use of collateral estoppel, we profit by seeking guidance from a jurisdiction whose requisites for collateral estoppel are the same as those set out in *White.* We can find such guidance in the case of *Parklane Hosiery, supra.*

 In *Parklane Hosiery,* the United States Supreme Court noted that offensive collateral estoppel should be treated differently from defensive collateral estoppel because it does not necessarily promote judicial economy in the same manner as defensive collateral estoppel and it may result in unfairness to a defendant if the defendant had little incentive to mount a vigorous defense in the first suit. *Id.* 439 U.S. at 329–31, 99 S.Ct. at 650–51. With those considerations in mind, the Court determined that the best approach would not be to preclude its use, but merely to afford broad discretion to trial courts as to when it should be applied. *Id.* In determining whether to permit offensive collateral estoppel, the trial court should consider whether the plaintiff could easily have joined in the prior action and if the application of the doctrine would be unfair to the defendant. *Id.* at 331, 99 S.Ct. at 652. We believe that, when used properly, offensive collateral estoppel will prevent the needless relitigation of issues and promote consistency in trial court judgments. Further, the Supreme Court's approach in *Parklane Hosiery* protects defendants from the unfair use of the doctrine by plaintiffs or others similarly situated. Accordingly, we hold that collateral estoppel may be used offensively subject to the standards set forth in *Parklane Hosiery.*

 Turning to the present case, we find no circumstances which would indicate that offensive collateral estoppel should not be permitted. Due to the multiplicity of claims in the Tofany action, the fact that a different (albeit subsidiary) corporation is the counterdefendant, and the mix of state

---

1. *See also Hockett v. Breunig* (1988), Ind.App., 526 N.E.2d 995, 1001 at n. 4 (Shields, J., concurring) ("[O]ffensive use of issue preclusion is more problematic than defensive use").

and federal claims, joinder of the two suits would have been at the least confusing and procedurally difficult. Thus, we cannot say that Tofany could "easily" have joined in the prior action. As for the second consideration, NBS had, and exercised, the opportunity to vigorously litigate the issue of the existence of the plan.[2]

■ NBS Imaging contends, however, that the elements of collateral estoppel have not been met.[3] First, it argues that there was no final judgment on the merits. The district court in *James* stated:

The findings of fact in this case clearly show that, despite lack of a formal written document, a reasonable person could ascertain that the intended benefits under the plan were 10 years of payments of 100% of the employee's base year salary. The class of beneficiaries of the plan were chosen senior management personnel and their stated beneficiaries. The source of financing was whole life insurance policies taken out on each covered employee. The procedures for receiving benefits consisted of a maximum of ten years to fully vest, one full year of employment before acquiring a vested interest (unless [Clive] Raymond [then president of NBS] should leave the company at which time all covered employees immediately acquired an interest in their vested amount) and payments to begin upon retirement and attainment of age sixty-five or at death, whichever occurred first. The decision to extend these benefits became a reality when [the insurance agent] notified the chosen senior management personnel of the plan. At that time, the insurance physicals were scheduled to also place the funding mechanism in motion. Subse-

quent to January 1, 1987, the company held out the retirement plan as a benefit to entice new employees. *There is no doubt that an ERISA-covered pension benefit plan was established by NBS as of January 1, 1987.*

721 F.Supp. at 175 (emphasis added). While reversing and remanding for a determination of whether James was enrolled in the plan, the Seventh Circuit Court of Appeals stated, "[W]e are not prepared to reverse the district judge's finding that there was a plan in effect when James was hired." 924 F.2d at 720. Upon remand, the case was settled and a stipulation of dismissal was filed, pursuant to which the ERISA claim was dismissed. NBS Imaging argues that because of the dismissal, there was no final judgment on the ERISA claim. It is incorrect. The existence of the pension plan was determined in the trial court, affirmed on appeal, and no further appeal was taken. For purposes of collateral estoppel, there was a final determination on that issue.

■ NBS Imaging also argues that neither the parties nor the issues are identical, basing both arguments on the fact that NBS was the defendant in *James*, while NBS Imaging is the party against which Tofany seeks to assert collateral estoppel. The identity of parties requirement has traditionally included the "privies" of the parties to the original action. *Sullivan v. American Casualty Co. of Reading, Pa.* (1991), Ind.App., 582 N.E.2d 890, 897. "Privies" include those with an interest in the subject matter affected by the judgment. *Id.* The determination of whether one is a privy is a matter of form, rather than substance; parties nominally the same may be in effect different, and those nominally different may be the same in legal

2. NBS Imaging argues that collateral estoppel should not be permitted because it was not able to introduce the testimony of Joseph Dickstein in the *James* case. It argues that Dickstein was unable to testify in *James* because he is a resident of Canada. However, Dickstein did not testify at trial in the Tofany case either; his deposition was offered in lieu of live testimony. The same option was available in *James*. Federal Rule of Civil Procedure 32(a)(3) permits a party to offer the deposition of a witness into evidence in lieu of live testimony if the witness

is out of the United States at the time of trial. NBS had both the opportunity and the incentive to offer Dickstein's testimony into evidence in the *James* case—it merely failed to do so.

3. NBS Imaging argues, *inter alia*, that mutuality of estoppel is not present here. Since we determined in *White* that mutuality of estoppel is no longer a requisite for collateral estoppel, we will not address NBS Imaging's argument on this point.

effect. *Id.* Thus, when a person owns most or all of the shares of a corporation and controls the affairs of that corporation, it is presumed that in any litigation involving the corporation, the individual has a sufficient commonality of interest to be considered a privy. *In re Gottheiner* (9th Cir.1983), 703 F.2d 1136, 1140. Subsidiaries are in privity with their principal for res judicata purposes when they sufficiently represent the principal's interests. *G & T Terminal Packaging v. Consolidated Rail Corp.* (S.D.N.Y.1989), 719 F.Supp. 153, 159. *See also Hessee Indus. Inc. v. Chemical Bank* (S.D.N.Y.1981), 508 F.Supp. 319, 323, *aff'd mem.,* (2d Cir.1981), 661 F.2d 909. Here, NBS Imaging is a wholly-owned subsidiary of NBS, and Tofany reported to the CEO of NBS. The pension plan in question is the same pension plan examined in *James.* The two corporations were even represented by the same counsel. Clearly, there is a commonality of interest between the two entities, and thus they are privies.

The elements required for collateral estoppel are present and Tofany was entitled to partial summary judgment on the issue of the existence of the pension plan. Therefore, we reverse the trial court's denial of partial summary judgment on that issue and remand for a new trial on Tofany's claims regarding the retirement plan.

## II.

### *Findings*

▆▆▆▆ Prior to trial, neither party submitted a written request for special findings of fact and conclusions of law pursuant to Indiana Trial Rule 52. At the conclusion of trial, the court requested that the litigants submit proposed findings of fact and accompanying briefs. However, the trial court rejected the proposed findings and issued a brief memorandum order which, according to Tofany, inadequately presents the reasoning of the court in "win/lose" terms. Tofany considers the brevity of the trial court's order disproportionate to the magnitude of the claims, the quantity of evidence adduced at trial and the extensive briefs and proposals submitted by counsel.

Trial Rule 52(A) provides in pertinent part:

In the case of issues tried upon the facts without a jury or with an advisory jury, the court shall determine the facts and judgment shall be entered thereon pursuant to Rule 58. *Upon its own motion, or the written request of any party filed with the court prior to the admission of evidence,* the court in all actions tried upon the facts without a jury or with an advisory jury ... shall find the facts specially and state its conclusions thereon.

(Emphasis added.) Tofany cites no authority in support of his proposition that a trial court's *sua sponte* solicitation of proposed findings obligates the court to enter substantially equivalent findings. A trial court has no obligation to make special findings absent a written motion. *E.W.R. v. T.L.C.* (1988), Ind.App., 528 N.E.2d 106, 108, *transfer denied.* In *E.W.R.,* the trial court granted an oral motion for special findings and ordered each party to submit proposed findings. However, the court declined to include the special findings upon entering final judgment. This court held that T.R. 52(A) was not triggered absent a written request and that reversible error could not be predicated upon a defective (oral) motion. *Id.*

▆▆▆▆ Where the trial court enters special findings without a written request, the general judgment will control as to the issues upon which the court has not found and the specific findings control as to the issues they cover. *In re Marriage of Snemis* (1991), Ind.App., 575 N.E.2d 650, 652. In short, the reviewing court is bound by the findings only as to the matters to which they refer and our deferential standard of review is otherwise unaffected by the trial court's entry of findings. *Id.*

The trial court's failure to support its judgment with complete findings does not mandate reversal as is required when findings have been requested.... We are constrained in this case to look to the evidence of record to determine if the

result is against the facts and circumstances before the court.

*Id.* (citations omitted). *Accord Forum Group, Inc. v. McMichael* (1991), Ind.App., 575 N.E.2d 308. "Because special findings were neither requested nor required, we will sustain the trial court's judgment on any theory which is supported by the facts." *Id.* at 310.

Here, the trial court was not obligated to enter special findings at all, due to the lack of a written request, and thus was clearly not obligated to enter findings with a degree of specificity mirroring those submitted by the parties.

## III.

### *Judgment*

Tofany next challenges the trial court's judgment as inconsistent with the evidence. As we stated above, our standard of review requires us to sustain the trial court's judgment on any theory which is supported by the facts. Since we reversed in Issue I, we will not address the trial court's finding that there was no retirement plan in existence.

■ Tofany first argues that the trial court erred in finding that his slander/libel claim was not sustained by the evidence. Truth is a defense to a claim of defamation, but the defamer bears the burden of proof. *Near East Side Community Organization v. Hair* (1990), Ind.App., 555 N.E.2d 1324, 1330. The trial court apparently concluded that NBS Imaging carried that burden. The alleged defamatory statements were statements made by Timothy Casgrain to the Fort Wayne News–Sentinel that Tofany was fired "because of alleged accounting irregularities," specifically, "There have been some accounting irregularities and because they oversaw accounting, they were held responsible." Record, p. 421. There was extensive evidence produced at trial that NBS Imaging experienced "accounting irregularities," to say the least. Moreover, there was evidence that as President of NBS Imaging, Tofany oversaw accounting. There was substantial evidence to support the trial court's

finding that the defamation claim was unfounded.

■ Tofany also argues that the trial court erred in finding that he did not have a three-year employment agreement with NBS Imaging. He bases his argument on a letter from Clive Raymond, President of NBS, to Tofany and his letter in response. The letter from Raymond, though it outlines a number of provisions for Tofany's employment, does not mention a three-year contract. Tofany's reply letter states, "I will await the final contract and assume it will be as we previously discussed—a three year term with a one year roll out each year." Record, p. 677. No "final contract" was ever forthcoming, nor was there a confirmation from Raymond in writing of these alleged terms of their discussion. Moreover, at trial Tofany claimed a three-year contract with a one-year roll out at an annual compensation of $150,000, yet at the time he was discharged he was making $180,000. It is evident that the trial judge elected not to accept Tofany's version of the contract, and we will not substitute our judgment for his.

## IV.

### *Damages Pursuant to Appellate Rule 15(G)*

NBS Imaging argues that Tofany's appeal is a "blatant abuse of the judicial process," entitling it to damages under Appellate Rule 15(G). Appellee's Brief at 35–36. We disagree.

In *Orr v. Turco Manufacturing Co., Inc.* (1987), Ind., 512 N.E.2d 151, 153, Justice Dickson wrote:

> The vitality of the law as a living institution rests largely upon its capacity to embrace and promote the opposing concepts of stability and growth. We are mindful of Dean Pound's aphorism: "Law must be stable and yet it cannot stand still." Pound, *Interpretations of Legal History*, p. 1, (1923).
>
> To facilitate these objectives, we must invite, not inhibit, the presentation of new and creative argument. We there-

fore hold that punitive sanctions may not be imposed to punish lack of merit unless an appellant's contentions and argument are utterly devoid of all plausibility.

Such is not the case here; in fact, one of the issues raised by Tofany is grounds for reversal. Accordingly, we must deny NBS Imaging's request for damages pursuant to Appellate Rule 15(G).

The judgment of the trial court is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

HOFFMAN and BUCHANAN, JJ., concur.